131 N.J. Super. 403 (1974)
330 A.2d 56
JEANETTE ZYGMANIAK, INDIVIDUALLY, AND AS ADMINISTRATRIX AND AS ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF GEORGE ZYGMANIAK, DECEASED, PLAINTIFF,
v.
KAWASAKI MOTORS CORP. U.S.A., A DELAWARE CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
December 4, 1974.
*405 Mr. Robert N. Wilentz for plaintiff (Messrs. Wilentz, Goldman and Spitzer, attorneys).
Mr. John I. Lisowski for defendant (Messrs. Morgan, Melhuish, Monaghan, McCoid and Spielvogel, attorneys).
MORTON I. GREENBERG, J.S.C.
Plaintiff, individually and as administratrix and administratrix ad prosequendum of the estate of her husband George Zygmaniak, brings suit against Kawasaki Motors Corp. U.S.A. charging that defects[1] in a motorcycle manufactured by Kawasaki allegedly caused decedent to lose control of the vehicle on June 17, 1973 and to be grievously injured. Plaintiff asserts survivorship (N.J.S.A. 2A:15-3) and wrongful death actions (N.J.S.A. 2A:31-1). The gravamen of the wrongful death claim is that decedent's injuries were so extreme and permanent that at his request his brother, Lester Zygmaniak, shot him on June 20, 1973 with a sawed-off shotgun, thus causing his death on June 22, 1973. Defendant now moves for partial summary judgment seeking a dismissal of the wrongful death count on the grounds that defendant had no duty to control Lester Zygmaniak and thereby protect decedent from him, and that decedent's death was as a matter of law not proximately caused by the alleged defects. There is no suggestion that Lester's action in killing his brother was motivated other than by the injuries and entreaties of decedent. The court has been advised that Lester was indicted for murder but acquitted by reason of insanity temporarily existing at the time of the shooting. Disposition of this motion compels the court to make no finding of Lester's mental state, for the applicable standard only requires a determination as to the existence of a dispute as to a material fact, so that if the same should be resolved in favor of plaintiff, defendant would *406 not be entitled to a judgment as a matter of law. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954).
In Goldberg v. Housing Authority of Newark, 38 N.J. 578 (1962), the Supreme Court, dealing with an effort of plaintiff to impose a duty on the authority to supply police protection for the benefit of its residents and visitors, pointed out that liability required a showing of both foreseeability and a violation of duty. In terms of foreseeability the court indicated that criminal conduct was foreseeable in many situations but that the proposed duty could not be imposed under the circumstances shown and thus there was no liability on the authority for a criminal assault by a third party. Goldberg is instructive as to a method of analysis on disposition of this motion as it teaches that the court must determine whether a jury might be allowed to find in the wrongful death action that defendant violated a duty owed decedent. It follows that consideration is necessary of whether the duty relates to the condition of the motorcycle or protection against the action of the brother. Defendant argues that since the motion is directed to the wrongful death and not the survivorship aspect of the complaint the court should isolate the immediate cause of death and, there obviously being no duty of defendant to guard against the shooting, grant the motion.
But the approach of defendant would invite a legal regression, for liability is frequently imposed for consequences not controllable by a defendant in fact or in law happening both before and after the violation of a duty owed some person. Thus, the law defines the duty owed as relating to a risk of harm and not an obligation to guard against pre-existing and subsequently occurring acts which aggravate what would otherwise be the less severe consequences of a tort or breach of warranty. The state of the law is apparent from cases holding that a wrongdoer is liable for all harm caused by his wrongful act, even though it is increased by an unknown physical condition which could not have been *407 anticipated or discovered prior to the wrongdoing, Dalton v. Gesser, 72 N.J. Super. 100 (App. Div. 1962); Hahn v. Delaware, L. and W.R.R. Co., 92 N.J.L. 277 (Sup. Ct. 1918), aff'd per curiam, 93 N.J.L. 463 (E. & A. 1919); or by superimposed medical malpractice, Knutsen v. Brown, 96 N.J. Super. 229 (App. Div. 1967). Goldberg is thus distinguishable from the case at bar since the duty sought to be required there, police protection, could not as a matter of judicial policy be imposed and the violation thereof in itself could cause no harm since the subsequent criminal conduct of the third party was prerequisite to injury. Quite distinguishably, plaintiff herein asserts a violation related to the condition of the motorcycle which, if established, unquestionably caused severe harm. Since it could hardly be argued that any Goldberg-style policy considerations forbid imposing a duty on a manufacturer with respect to a product placed in commerce, it follows that defendant's motion may not be granted on the basis of the absence of duty. See Scanlon v. General Motors Corp., 65 N.J. 582 (1974).
The more substantial question raised is whether the court must rule as a matter of law that the alleged defect did not proximately cause the death, but rather that the death was attributable to an intervening act. Consideration of this proposition immediately lays bare its basic implicit inequity. Damages are ordinarily measured by comparing the condition a plaintiff would have been in had a defendant not been negligent and thus includes compensation for bodily injuries; pain and suffering, past, present and future; the effect of injuries upon health depending on their degree and probable duration; permanent disability; medical expenses, both past and future, reasonably necessary to cure or alleviate a plaintiff's injuries and disability, and all other pecuniary losses suffered or to be suffered in the future as the result of a plaintiff's inability to engage in his usual occupation. Gleitman v. Cosgrove, 49 N.J. 22 (1967); Theobold v. Angelos, 40 N.J. 295 (1963). While undoubtedly the death of George Zygmaniak materially eliminated certain aspects of these *408 damages relating to future medical bills and pain and suffering, the item of future pecuniary loss of earnings must, for purposes of this motion, be considered not affected by the death because the allegations of the seriousness of his injuries leading to permanent disability are supportable. Thus, acceptance of defendant's argument would result in this defendant being in a better position should it be held liable than if the intervening act had not occurred. But from the viewpoint of plaintiff there would be no offsetting gain since the future pecuniary loss of earnings would have been similar without the death. The fact that the recovery, in the absence of death, would have belonged to George Zygmaniak rather than the statutory beneficiaries designated by the wrongful death statute, makes no difference, for the latter persons are simply persons dependent on decedent or his heirs at law who thus would likely have benefited by his inter vivos pecuniary recovery. N.J.S.A. 2A:31-4. Thus, extinguishment of the right to recover future loss of earnings would advantage defendant, to the inequitable detriment of plaintiff.
This injustice could substantially be eliminated by a different computation of damages under the survivorship statute. N.J.S.A. 2A:15-3. It is implicit thereunder that if a plaintiff dies from legally unrelated causes prior to a trial but after the injury, the jury will only compute damages for the time of his actual life. Auer v. Sinclair Refining Co., 103 N.J.L. 372 (E. & A. 1927); Budd v. Erie Lackawanna R.R. Co., 98 N.J. Super. 47 (App. Div. 1967). Elimination from the consideration of the jury of the subsequent death attributable in fact but not in law to defendant's conduct for purposes of assessing loss of earnings beyond the actual death would tend to overcome the inequity and perhaps generate factual problems no more speculative than those in a wrongful death action since in either case the jury would consider decedent's hypothetical life expectancy. But such a result is not desirable because it allocates the recovery for loss of earnings to the estate of decedent and not to the beneficiaries *409 designated by the wrongful death statute and thus Legislatively preferred. The heirs or devisees of the estate may not necessarily be the persons dependent on the beneficiary during his lifetime or those designated by the wrongful death statute. See Soden v. Trenton and Mercer County Traction Corp., 101 N.J.L. 393 (E. & A. 1925).
Defendant's position further suffers in that it is not in accord with the appellate decisions in the State. In Rappaport v. Nichols, 31 N.J. 188 (1959), the Supreme Court held that a jury question was presented by a claim that a tavern wrongfully sold alcoholic beverages to a minor who caused an injury to a third party by reason thereof. The court declared:
* * * The defendants contend that, assuming their conduct was unlawful and negligent as charged in the complaint, it was nevertheless not the proximate cause of the injuries suffered. But a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. * * * The fact that there were also intervening causes which were foreseeable or were normal incidents of risk created would not relieve the tortfeasor of liability. * * * Ordinarily these questions of proximate and intervening cause are left to the jury for is factual determination. * * * [at 203]
In Picco v. Fords Diner, Inc., 113 N.J. Super. 465 (1971), the Appellate Division held that a jury could reasonably conclude that a diner had an obligation to provide illumination in its parking areas for the protection of its patrons, and its failure to do so could generate liability for damages suffered by one in a criminal assault. The Appellate Division in Zinck v. Whelan, 120 N.J. Super. 432 (1972), announced that a defendant who left keys in an automobile and thereby facilitated the theft could be liable to persons injured three days after and 50 miles away from where defendant had left the car, even though the car had been taken by a thief and was thus driven without his consent. The basis of liability was defendant's own negligence rather than vicarious responsibility for the driver. The court indicated *410 that the proximate cause issue was for the jury. In Seidel v. Greenberg, 108 N.J. Super. 248 (Law Div. 1969), in a nonjury trial the court imposed liability on defendants guilty of arson as a result of which plaintiff was wrongfully charged with the crime.
If the defendants in Rappaport, Picco, Zinck and Seidel were not exonerated as a matter of law, it is difficult to comprehend why a different result should be reached for defendant herein. Indeed, defendant's position is weaker than that of the defendants in any of these cases, since its breach of duty, if it be shown at trial, indisputably caused proximately related injuries, while in Rappaport, Picco, Zinck and Seidel the existence of any injury proximately attributable to the breach of duty was reasonably disputed as a matter of law. Thus, this court is precluded on this motion from holding that a person with severe injuries will seek death so rarely that the shooting in this incident must be deemed an intervening cause. In fact, this case is similar to the settled law imposing liability on a prime tortfeasor for the subsequent medical malpractice. See Knutsen v. Brown, supra.
Brenner v. Public Service Production Co., 110 N.J.L. 347 (E. & A. 1932), and Genovay v. Fox, 29 N.J. 436 (1959), rev'g 50 N.J. Super. 538 (App. Div. 1958), are not contrary to the holding herein. In Brenner plaintiff's decedent committed suicide some months after an accident. The Court of Errors and Appeals sustained a nonsuit since there was nothing to negative a reasonable inference that the cause of the suicide was not related to defendant's actions. The fact situation at bar is different because on this motion the court cannot say that a reasonable inference that the death was unrelated to defendant's product may be drawn. In Genovay v. Fox a patron in a tavern sought to impose liability on a bar owner for engaging conduct designed to incite resistance to a bandit who then injured plaintiff. The court held that a finding of such by the jury would be based on pure speculation. Contrariwise, it cannot be said that a *411 finding that George Zygmaniak was shot because of his injuries would be predicated on an illogical inference.
The court is aware that elsewhere the analogous problem of suicide following an accident is resolvable by reference to whether the defendant's conduct was negligent or was intentionally wrongful and whether the suicide was the result of an irresistible impulse. Such an approach might lead to a different result on this motion. See Annotation, 11 A.L.R.2d 751 (1950); Comment, 15 Rutgers L. Rev. 134 (1960). The court believes, however, that this motion should be decided on the applicable principles announced by our appellate courts and which therefore bind a trial judge. Further, it is difficult to understand why in this action seeking compensatory damages such considerations and special rules should be adopted. The approach of the court reflects an emphasis on the reality of the cause and effect of the death rather than on a label characterizing conduct and embodies a realization that on this motion the court should consider the death as having limited rather than expanded the otherwise appropriate inter vivos damages. Heavner v. Uniroyal, Inc., 63 N.J. 130, 142-158 (1973). On a summary judgment motion this is not a case in which the damages must be considered expanded rather than contracted by a voluntary suicide.
For the foregoing reasons the motion for partial summary judgment is denied.
NOTES
[1] A count of the complaint alleges that the vehicle was intrinsically dangerous but for purposes of this motion this count may be considered as an allegation of design defect.