Richard L. **GILLMAN**, Plaintiff,

v.

**BURLINGTON NORTHERN RAILROAD COMPANY,**
Defendant.

No. 86 C 3424.

United States District Court,
N.D. Illinois, E.D.

Sept. 24, 1987.

**914**

Patrick S. O'Brien, Roy W. Strawn, Paul L. Pratt, P.C., Villa Park, Ill., for plaintiff.

Kenneth Wysoglad, John Newell, Chicago, Ill., for defendant.

### MEMORANDUM OPINION

GRADY, Chief Judge.

This case comes before us on the motion of defendant Burlington Northern Railroad Company ("Burlington") for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or in the alternative to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, we deny the motion.

### FACTS

Plaintiff Richard L. Gillman ("Gillman") was employed by defendant Burlington as a foreman. Complaint at ¶ 2. On May 13, 1983, a crane which was hoisting a rail dropped the rail on Gillman's coworker. *Id.* at ¶ 4. The coworker was killed. *Id.* Gillman alleges that the coworker's death was due to Burlington's negligence in failing to provide suitable tools, sufficient manpower, safe work methods and a safe workplace and that this negligence gives rise to a cause of action under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 ("FELA"). *Id.* at ¶ 5. As a result of Burlington's allegedly negligent acts, "Plaintiff sustained severe and permanent injuries in that he suffered shock to his nervous system and severe emotional distress, resulting in disability which has caused and will cause him in the future to suffer great pain and mental anguish...." *Id.* at ¶ 6. Gillman prays for damages of $500,000.00. *Id.*

Burlington has answered Gillman's complaint and has denied all allegations of negligence. Answer at ¶¶ 5–6. Burlington moves for judgment on the pleadings, or in the alternative, to dismiss the complaint for failure to state a claim, arguing that plaintiff's "non-physical" injury is not compensable under the FELA. Burlington also claims that the complaint is barred by the statute of limitations.

## DISCUSSION

The Supreme Court's recent decision in *Atchison, Topeka and Santa Fe Ry. v. Buell,* —— U.S. ——, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), expressly leaves open the question of whether a railroad employee's "wholly mental injury" is compensable under the FELA. In *Buell,* plaintiff claimed that his supervisors "harassed, threatened, and intimidated" him, causing "mental and emotional suffering." *Id.* at 1412. After determining that the complaint was covered by the FELA and not the labor relations grievance procedure of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"), the Court considered whether 45 U.S.C. § 51, which makes railroads liable to "any person suffering injury while he is employed by such carrier," applied to "non-physical injuries."

> The question whether "emotional injury" is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case. Assuming, as we have, that FELA jurisprudence gleans guidance from common law developments, see *Urie v. Thompson,* 337 U.S. at 174, 69 S.Ct. at 1026–27, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.... [A]lthough many States have now recognized a tort of negligent infliction of emotional distress, they too vary in the degree of objective symptomology the victim must demonstrate.... In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive "yes" or "no" answer.

107 S.Ct. at 1417–18 (citations omitted).

As the Supreme Court has left the question open, we look to see if the Seventh Circuit has any wisdom to offer in this area. Burlington argues that a case decided prior to *Buell, Lancaster v. Norfolk & Western Ry.,* 773 F.2d 807 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987), answers the question in the negative. In *Lancaster,* as in *Buell,* the plaintiff had been harassed by his supervisors. However, the conduct in question had both physical and mental impact—the foreman had threatened Lancaster with a broom handle, a sledgehammer and a pickax, pinched him and pulled his hair in addition to browbeating him. 773 F.2d at 811. Lancaster's mental condition deteriorated; he became unable to work and was diagnosed as schizophrenic. *Id.*

In affirming a jury verdict of $850,000 for plaintiff, the *Lancaster* court faced the question of whether the RLA's arbitration dispute mechanism for labor agreement violations precluded the FELA claim in federal court. The court stated:

> [T]he FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact—an act such as telling a man he's fired, which is precisely the type of act for which the Railway Labor Act provides a swift and adequate remedy. Although *Yawn v. Southern Ry.,* 591 F.2d 312 (5th Cir. 1979), points the other way, we find its analysis unpersuasive. Clerical employees claimed to have suffered physical and mental strain because the railroad had not given them enough help for them to be able to do their jobs adequately. In holding that the railroad's conduct might be actionable under the FELA, the court pointed out correctly that a railroad worker who incurs physical or mental injury from unsafe working conditions has an FELA claim.... But the complaint was not that working conditions were unsafe; it was that clerical employees had been given too much—not too dangerous—work to do. This is not our idea of an FELA claim; it has nothing to do with the security of the persons from physical invasions or menaces.

*Id.* at 813. Concluding that Lancaster had alleged "conventional torts involving offensive physical contact or, in the case of assault, placing the victim in apprehension of an imminent such contact," the court held that such conduct was actionable under the FELA, and affirmed the jury verdict. *Id.* at 815.

We do not think that *Lancaster*'s analysis requires judgment on the pleadings for Burlington in this case. The *Lancaster* court defined the "non-physical" torts in a way so as to distinguish FELA cases from RLA cases. Discussing these torts, the court stated:

> More and more states allow suits for wrongful discharge when a worker is fired for a reason that is contrary to public policy (such as giving testimony against his employer), and for intentional infliction of emotional distress even when the act that caused the distress was firing the plaintiff. Invariably courts asked to decide whether either type of suit is preempted by the Railway Labor Act hold that it is. The courts see such suits, rightly or wrongly, as end runs around the Railway Labor Act's policy of channelling employment disputes to arbitration. But the courts do not state the issue as one of supersession by the Railway Labor Act of the Federal Employers' Liability Act, because no court … has thought that any of these new torts arise under the FELA.

*Id.* at 815. These concerns are not at stake in this case. It is not a case of an RLA labor dispute reclassified as an intentional tort. Gillman claims that he suffered emotional distress as the result of Burlington's negligence in, causing an accident that killed a fellow worker. The *Lancaster* court was trying to exclude *intentional* infliction of emotional distress, manifested in the form of firing, harassment, or other employee maltreatment, from the reach of the FELA because such situations are more properly covered by the grievance mechanisms of the RLA.

One case decided after *Buell* emphasized the distinction between negligent and intentional torts in finding no FELA cause of action. In *Adkins v. Seabord System R.R.*, 821 F.2d 340 (6th Cir.1987), plaintiff sued for intentional infliction of emotional distress after his employer threatened him with discharge for insubordination. The court stated, "We note that the Court in *Buell* referred only to negligent conduct as giving rise to a FELA claim. Although *Buell* notes that the FELA has been held to apply to some intentional torts, the FELA has not been applied to intentional torts lacking any physical dimension such as assault." *Id.* at 341–42 (citations omitted). Because the complaint alleged only deliberate and premeditated acts and made no reference to negligence, the plaintiff's FELA claim failed. *Id.* at 342.

Neither *Lancaster* nor *Adkins* stands for the proposition that emotional distress is not compensable under the FELA; both courts determined that mental injury brought on by intentional misconduct by the employer was better suited for adjudication under the RLA. Therefore, we approach the question of whether Gillman states a claim on a "clean slate," following *Buell*'s instruction to develop "legal principles to the particular facts at hand." 107 S.Ct. at 1418.

We believe the negligent infliction of emotional distress—an injury attributable to workplace negligence—should be covered by the FELA. It is true that when the FELA was enacted in 1906, common law jurisdictions did not recognize the negligent infliction of emotional distress as compensable injury. However, realizing that "FELA jurisprudence gleans guidance from common law development," *Buell*, 107 S.Ct. at 1417, we observe that the majority of jurisdictions now recognize the tort, including Illinois, the forum state here. *Rickey v. Chicago Transit Authority*, 98 Ill.2d 546, 75 Ill.Dec. 211, 215, 457 N.E.2d 1, 5 (1983); *see also* Prosser and Keeton on the Law of Torts § 54 at 364–65 (5th ed. 1984). ("[T]he great majority of courts have now repudiated the requirement of 'impact' regarding as sufficient the requirement that the mental distress be certified by some physical injury, illness or other objective physical manifestation.") We realize that what constitutes negligence under the FELA is a federal question and that federal decisional law formulating and applying the concept governs. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1026–27, 93 L.Ed. 1282 (1949). Yet the paucity of federal authority on the novel question presented in this case leads

us to look to common law as developed by state courts for our analysis.

However, in allowing recovery for negligent infliction of emotional distress under the FELA, we think it necessary to impose a limiting principle, one that will narrow the reach of the action to those situations in which physically dangerous conditions or occurrences bring on the mental distress. To that end, we adopt what the *Rickey* court referred to as the "zone of physical danger" rule:

> Basically, under it a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact.

*Id.* 75 Ill.Dec. at 215, 457 N.E.2d at 5. This standard is the best tailored for liability to a bystander under the FELA—the happenstance that another worker instead of the bystander was physically "impacted" as a result of the employer's negligence should not prevent the bystander from recovering for provable mental injury caused by that negligence. At the same time, the employer's responsibility should be limited only to those employees who were actually placed in danger by that negligence in order to avoid a flood of claims from those with less

significant connections to the incident—the "unforeseeable" plaintiffs. *See Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99 (1928). We hold that the "zone of danger" rule, as announced by the Supreme Court of Illinois in *Rickey*, most closely follows the purpose of the FELA—to protect the security of the worker from "physical invasions or menaces." *Lancaster*, 773 F.2d at 813.[1] As federal rather than state law applies to FELA claims, we are not bound by *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to follow the substantive law of Illinois announced in *Rickey*. We do so as a matter of choice, believing that the zone of danger test is the most appropriate standard to circumscribe the negligent infliction of emotional distress action in the FELA setting.

■ In this case, Gillman may or may not have been within the zone of danger. Obviously, a falling rail may put a bystander in a "zone of physical danger" giving him a reasonable fear for his safety. However, the complaint is so sketchy as to the details of the accident—we do not know where plaintiff was when it happened or whether he even witnessed it—that we cannot determine whether he could have been in the zone of danger. When the Illinois Supreme Court announced its new standard in *Rickey*, the court gave the plaintiff leave to file an amended complaint on remand because the facts needed to meet the zone of danger standard could not be "precisely determined" from the complaint. 457 N.E. 2d at 5. We will give Gillman the same opportunity, providing that he can amend his complaint to allege that he was close

---

1. We note also that the zone of danger rule is "said to have become the majority rule in this country." *Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 361, 461 N.E.2d 843, 847 (1984); *Rickey*, 75 Ill.Dec. at 215, 457 N.E.2d at 5. It has also been adopted in the *Restatement of Torts* § 436(2). Other courts adopting the rule include *Bovsun*, 473 N.Y.S.2d at 363, 461 N.E.2d at 849; *Wilson v. Sears Roebuck & Co.*, 757 F.2d 948, 951 (8th Cir.1983) (Nebraska law); *Stadler v. Cross*, 295 N.W.2d 552, 554 (Minn. 1980); *Vaillancourt v. Medical Center Hosp. of Vermont, Inc.*, 139 Vt. 138, 425 A.2d 92 (1980); *Keck v. Jackson*, 122 Ariz. 114, 593 P.2d 668, 669, 670 (1979); *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d 861, 865–66 (Tenn.

1978); *Whetham v. Bismarck Hosp.*, 197 N.W.2d 678, 684 (N.D.1971); *Robb v. Pennsylvania R.R. Co.*, 58 Del. 454, 210 A.2d 709, 714–15 (1965). Other courts hold that a plaintiff may state a claim for negligent infliction of emotional distress even if that plaintiff has no fear for his or her own safety, as long as the emotional injury is foreseeable. *See, e.g., Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 766 (1983); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672, 677 (1979); *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300, 307 (1979); *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295, 1302 (1978); *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 764–65 (1974); *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 85, 441 P.2d 912, 925 (1968).

enough to the accident to have had "reasonable fear" for his own safety.[2]

## Statute of Limitations

■ Burlington has also moved to dismiss on the basis of the statute of limitations, which, under the FELA, is three years from the day the cause of action accrued. 45 U.S.C. § 56. The complaint is stamped "filed 1986 May 15," which is three years and two days after the accident. Gillman argues that because he did not discover until "some months later" that his injuries resulted from the accident, the cause of action did not "accrue" until well after the date of the accident. FELA actions are said to "accrue" when the plaintiff becomes aware that he has been injured and that his injury is work related. *Emmons v. Southern Pacific Transportation Co.*, 701 F.2d 1112, 1119 (5th Cir.1983). Gillman also supplies the affidavit of the Chief Deputy Clerk for the Northern District of Illinois, who states that his office received payment from Gillman's attorney for filing of two new civil actions on May 8, 1986. Affidavit of Perry Moses at ¶ 3. This gives some support to Gillman's claim that the clerk's office received the complaint on May 8 but did not file it until May 15, two days after the statute of limitations had run.

Burlington has not responded to Gillman's counter-arguments, either in its reply memorandum or by taking up our invitation to respond to Gillman's subsequently submitted affidavit evidence. As a result, we will deny the motion to dismiss on the basis of the statute of limitations without prejudice.

## CONCLUSION

Burlington's motion for judgment on the pleadings, or in the alternative to dismiss, is denied. Its motion to dismiss on the

basis of the statute of limitations is denied without prejudice. Gillman is given until October 13, 1987, to amend his complaint. Burlington is to plead to the amended complaint by November 3, 1987. This case is set for a status hearing on November 10, 1987, at 9:45 a.m.

---

2. We note that the "zone of danger" test, as enunciated in *Rickey*, is silent as to *when* the plaintiff must have felt that "reasonable fear" for his own safety. It is unclear whether the plaintiff must be aware of the risk to him at the time it is present or whether it is sufficient that the plaintiff had in fact been in danger at the same time as the victim and was emotionally upset when he realized his narrow escape after the incident. The present verb tense used by the *Rickey* court ("a bystander who *is* in a zone of physical danger and ... *has* reasonable fear") seems to support the former interpretation, as does use of the word "fear," which indicates an emotion caused by anticipation or awareness of danger. In either case, plaintiff in amending his complaint should allege at what time he felt fear for his own safety so that the issue (if indeed there is one) may be joined.