Mary HALKO, as Administratrix of the Goods, Chattels and Credits of Edward Halko, Deceased, Plaintiff,

v.

NEW JERSEY TRANSIT RAIL OPERA-
TIONS, INC. and Consolidated Rail
Corporation, Defendants.

No. 84 Civ. 6300 (CHT).

United States District Court,
S.D. New York.

Dec. 7, 1987.

Elkind, Flynn & Maurer, P.C., New York City (Michael Flynn, of counsel), for plaintiff.

Hunton & Williams, New York City (Robert M. Peet and Thomas V. McMahon, of counsel), for defendant New Jersey Transit Rail Operations, Inc.

Johnston, McShane & Kilgannon, New York City (Bruce W. McShane, of counsel), Fitzhugh & Associates, Boston, Mass. (Michael A. Fitzhugh and Veronica J. Bailey, of counsel), and Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Ralph G. Wellington and Margaret S. Woodruff, of counsel), for defendant Consol. Rail Corp.

## OPINION

TENNEY, District Judge.

Plaintiff Mary Halko has brought this action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60 (1982), alleging that Consolidated Rail Corporation ("Conrail") and New Jersey Transit Rail Operations, Inc. ("NJT") were negligent in failing to properly hire, train and supervise its management which contributed to the death of Edward Halko ("Halko"), the plaintiff's decedent. Plaintiff's complaint states two counts of injury. The first claim seeks compensation for a physical injury to Halko's ankle and is only against Conrail. The second claim is for wrongful death caused by emotional injury.

Defendants move for partial summary judgment pursuant to Fed.R.Civ.P. 56, dismissing the second claim. They argue that the injury suffered is not cognizable under FELA and that Halko's suicide was not foreseeable. In addition, both defendants in their initial briefs also claim that this court lacks subject matter jurisdiction.[1]

For the reasons set forth below, the Court finds (1) that the FELA covers the injury alleged to have been inflicted on Halko; (2) that a jury could find that Conrail acted negligently toward Halko; and (3) that a jury could find that Conrail's negligence played a role in Halko's death; but that (4) NJT did not act negligently toward Halko. Therefore, Conrail's motion for summary judgment is denied. The motion of NJT is granted, and the action against it is dismissed.

## BACKGROUND

The plaintiff's decedent was a railway car inspector for Conrail commencing April 1976. He worked at Conrail's Bay Head Yard in New Jersey. His job duties entailed inspecting various mechanical parts of the cars and assuring their general safe-

---

1. Both Conrail and NJT claim in their briefs that Halko's injury was a matter for arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. § 151–88 (1982). However, the Supreme Court has held that a claim for emotional injury is not barred under the FELA merely because the injury could have been the subject of RLA arbitra-

tion. *Atchison, Topeka and Santa Fe Ry. v. Buell,* — U.S. —, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). Conrail has conceded this point. Conrail's Supplemental Memo. at 2. NJT's papers were submitted before the Supreme Court's decision.

ty. Plaintiff's claim is that Conrail negligently failed to hire competent supervisory personnel and retained them and was therefore derelict in its duty to provide Halko with a safe working environment. To demonstrate its allegation that the supervisory personnel were incompetent, plaintiff offers an internal memorandum of Conrail dated March 16, 1982. The memorandum was the culmination of an internal investigation in which foreman Robert Lisk ("Lisk") was accused of sexual harassment of female employees. The activity of Lisk involved placing mud on the floor of cars just cleaned, arbitrarily docking the complainants for time off, and various other episodes of general harassment. The memorandum was drafted by J.F. Allen, Conrail's assistant regional personnel manager, and was sent to F.J. Flynn, Conrail's division superintendent. The memorandum concludes that:

> [i]t is in my opinion the position of Foreman is one of responsibility and as such, the person fil[l]ing this position is responsible for supervising other employees equally and without prejudice. *We feel Mr. Lisk has demonstrated the inability to handle this position.*

Plaintiff's Exhibit ("Pl. Exh.") K (emphasis added).

Plaintiff alleges that starting March 1982 members of Conrail's supervisory staff began a concerted effort to harass her husband Halko. The two main persons who allegedly abused Halko were general foreman Mark Wuelfing ("Wuelfing") and Lisk. On March 11, 1982, Halko was charged by Wuelfing with failing to adequately inspect a car on February 18, 1982. Pl. Exh. N. It is uncontradicted that no hearing was ever conducted. According to plaintiff, the notice of trial was a wrongful accusation whose sole aim was to cause Halko to fear for his job security.

The next episode which plaintiff claims is evidence of harassment occurred over a six month time span. Beginning in April 1982 and continuing into September 1982, Halko experienced inexplicable paycheck shortages on a regular basis. Plaintiff claims that the daily time records were called into a Conrail bookkeeping office by either foreman Dege or Wuelfing. According to plaintiff, Halko first requested help from Lisk. When this approach proved unsuccessful, Halko confronted Wuelfing but the shortages continued. A fellow employee had stated that "he [Halko] would talk to me about it, about the bills, and five kids he has to feed, he was upset about it. He was a hard worker. He also wanted to work and feed his family, couldn't understand why they were fooling around with all of this, the pay checks, jobs." Deposition ("Dep.") of DiSanto at 37, Pl. Exh. M. Another co-worker stated, "[h]e was being harassed. I felt he was being harassed through his payroll then. That is the way the[y] did it...." Dep. of Rockwell at 4, Pl. Exh. P.

The Halkos continued to request assistance from Conrail at various management levels. The Halkos then wrote a letter to the president of Conrail. Pl. Exh. Q. In it, they referred to the problem with the paychecks. Interestingly, the letter requested emphatically that Halko not be labeled a troublemaker for fear of losing his job. "I hope this doesn't cause my husband to lose his job as being a trouble maker." *Id.* Shortly following the letter to Crane, the shortages ceased. In connection with the paycheck shortages, plaintiff offers an internal Conrail memorandum addressed to Wuelfing. The letter refers to the paycheck problem and specifically states, "M.E. Wuelfing—Watch closely!" Pl. Exh. R.

The next episode of torment which allegedly plagued Halko involved the takeover of NJT. Pursuant to the North East Rail Service Act of 1981, 45 U.S.C. § 1101, NJT was compelled to take over Conrail's passenger operations in New Jersey including Bay Head Yard. Conrail's employees were required to bid for positions with NJT or remain with Conrail in freight operations. Halko bid for a job with NJT. NJT evaluated the bids and then awarded jobs. At the time, Halko did not enjoy seniority and consequently was unsure of his future employment. Plaintiff alleges that Wuelfing played mind games with Halko by informing him on one day he was selected by NJT

and then reversing himself by telling Halko he was not selected. Wuelfing would tell Halko "once you got the job, the next day you don't have the job ..." at least twice a week in December. Dep. of Pietraszka at 18, Pl. Exh. F. Another coworker stated, "[t]hey were playing handball with him, really, where he got bounced back and forth. He didn't know where he was going, as a matter of fact, and it got him all distressed." Dep. of Rockwell at 6, Pl. Exh. P. At around Christmas, Halko discussed his anxiety over the NJT takeover with foreman Thomas Powers ("Powers"). Powers stated that Halko was very nervous about the NJT takeover. Dep. of Powers, Pl. Exh. G at 57. Powers also stated that Halko "was the worst case" he had ever seen. *Id.* at 79. Conrail admits that both Wuelfing and Halko were notified of NJT's decision relating to Halko on January 7, 1983. Plaintiff claims Wuelfing's remarks to Halko in December constituted severe emotional torment.

Another incident of claimed harassment also occurred at around this time. It is undisputed that Halko received a personal injury while disconnecting and coupling two railway cars. The injury was a severe steam burn to his ankle. Pl. Exh. W. According to plaintiff, the physicians at the hospital instructed him not to work for a while for fear of developing an infection. Plaintiff alleges that Lisk threatened to discipline Halko if he did not work. Lisk claims that he does not remember threatening Halko. Dep. of Lisk at 58, Pl. Exh. E.

A co-worker stated that Halko told him if he (Halko) did not work he would be brought up on charges. Rockwell Dep. at 11, Pl. Exh. P. Another fellow employee stated that Halko informed him, "I have to come in to work or they are going to bring me up on charges, if I don't come in to work." DiSanto Dep. at 41, Pl. Exh. M.

Another co-worker stated that he discussed the situation with Halko after Halko showed him the injury. After observing the burned ankle, he asked Halko why he was not at home and Halko replied that he

feared for his job. Dep. of McGuire at 61–62, Pl. Exh. T.

On New Year's Eve, a Conrail doctor removed Halko from active employment after his ankle became infected. Halko, still unsure whether he was hired by NJT, called co-worker Rockwell on New Year's Eve. "Ed Halko was crying to me over the phone, he was in complete disarray, he didn't know what he was doing, and he said, 'please help me.' He was really upset." Rockwell Dep. at 7, Pl. Exh. P. According to plaintiff, Halko then called George Toadvine, a Conrail counselor. The counselor advised Halko that because no one knew whether Halko was an employee of NJT or Conrail, no assistance could be rendered.

Allegedly at around this time, Halko made an unsuccessful suicide attempt.[2] Halko continued to work at Bay Head Yard and was notified on January 7, 1983 that NJT had in fact hired him.

Shortly after being employed by NJT, plaintiff asserts that Halko was the victim of continued emotional abuse. This harassment involved Wuelfing's threat to bring Halko and a fellow employee up on charges for failing to properly inspect an air hose. The other incident involved foreman Powers accusing Halko and this same co-worker of sleeping on the job.

Immediately thereafter, Halko approached Lisk and covertly recorded their conversation. A reading of the transcript of the recording reveals a heated exchange where both men discussed the recent charges against Halko.

That night, Halko entered his car and arranged the exhaust system in order to facilitate his death. Prior to his expiration, Halko recorded a suicide message. In it, he discussed the problems he had with both Wuelfing and Lisk. In addition, he mentioned the various episodes of harassment at Bay Head Yard. He also described his unsuccessful relationship with his father and numerous other family difficulties he encountered. Halko also mentioned that

---

2. This attempt is mentioned in the suicide tape. *See infra.*

he made an unsuccessful suicide attempt on New Year's Eve.

## DISCUSSION

Under the pertinent provisions of the Federal Employers' Liability Act (FELA),

Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier....

45 U.S.C. § 51.

Therefore, FELA imposes four requirements before a plaintiff can recover. First, the plaintiff must have suffered an injury. Second, the plaintiff's work must involve commercial transport. Third, the defendant must be negligent. Fourth, the defendant's negligence must have played a role in the injury.

(a) *The plaintiff must have sustained an injury.*

The complaint herein alleges that Halko's death by suicide was the result of torment to which he was subjected while an employee of Conrail. Complaint ¶ 12. Essentially, this is a claim for the negligent infliction of emotional distress leading to suicide. Defendant asserts that the complaint fails to state an actionable claim since torts which work through a non-physical means are not cognizable under the FELA. Conrail's Memorandum at 44. Consequently, according to defendants, Halko's action is barred since his injury was not a physical one. Conrail's Memorandum at 45. This court disagrees with Conrail's position.

In *Atchison, Topeka and Santa Fe Ry Co. v. Buell,* — U.S. —, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), the plaintiff alleged that his supervisors threatened and harassed him which resulted in emotional injury. The Supreme Court stated, "whether 'emotional injury' is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case." *Id.* 107 S.Ct. at 1417. The Court added that "although many States have now recognized a tort of negligent infliction of emotional distress, they too vary in the degree of objective symptomatology the victim must demonstrate." *Id.* at 1418.

It is true that in the past, courts were reluctant to allow compensation for psychic injury unaccompanied by physical injury. However, most courts now recognize such claims although they exercise caution in this area. Courts are primarily concerned with "(1) the problem of permitting legal redress for harm that is often temporary and relatively trivial; (2) the danger that claims of mental harm will be falsified or imagined; and (3) the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequences which appear remote from the 'wrongful' act." Prosser & Keeton, *The Law of Torts* § 54 (5th Ed.1984) ("Prosser") at 360–61.

Prosser adds that most jurisdictions "have now repudiated the requirement of 'impact', regarding as sufficient the requirement that the mental distress be certified by some physical injury, illness or other objective physical manifestation." *Id.* at 364.

■ In this case, there certainly is a physical manifestation of the emotional distress which quite clearly was not trivial or imagined. Moreover, the court is not dealing with a totally emotional injury since there was in fact a physical consequence albeit a delayed reaction.

Recently, courts in several circuits have found that a claim for the negligent infliction of emotional distress is cognizable under the FELA. In *Taylor v. Burlington N.R.R.,* 787 F.2d 1309 (9th Cir.1986), the plaintiff claimed that various episodes of harassment by the defendant's foreman resulted in his becoming a paranoid schizophrenic. As in the instant case, the defendant argued that the FELA did not cover an emotional injury but only a physical one.

The court did not agree. "The law of this circuit is that railroad employees may assert claims under this section for wholly mental injury." *Id.* at 1313.

Another case typifying this approach is *Hagerty v. L & L Marine Services Inc.*, 788 F.2d 315 (5th Cir.), *modified*, 797 F.2d 256 (5th Cir.1986). In *Hagerty*, a seaman sued under the Jones Act[3] after having been drenched in harmful chemicals in the course of his employment. One of the claims the plaintiff asserted was one for emotional injury due to fear of developing cancer in the future. In rebutting the argument that physical injury was required, the court stated that "[w]ith or without physical injury or impact, a plaintiff is entitled to recover damages for serious mental distress" which he suffers. *Id.* at 318.

In *Gillman v. Burlington N.R.R.*, 673 F.Supp. 913 (N.D.Ill.1987), the plaintiff claimed injuries for emotional distress after witnessing a co-worker's death. In rejecting the defendant's argument that such an injury is not actionable under the FELA, the court stated, "[w]e believe the negligent infliction of emotional distress—an injury attributable to workplace negligence—should be covered by the FELA." *Id.*, at 916.

Conrail cites numerous cases allegedly supporting its view that non-physical injury is not cognizable under the FELA. One such case is *Lancaster v. Norfolk & W. Ry.*, 773 F.2d 807 (7th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987), in which the plaintiff claimed he was both physically and mentally abused by his supervisors leading to an emotional breakdown. The court, in affirming a jury verdict in the plaintiff's favor stated, "the FELA does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact—an act such as telling a man he's fired, which is precisely the type of act for which the Railway Labor Act provides a swift and adequate remedy." *Id.* at 813. The court

notes (1) that *Lancaster* was decided before *Buell*, and (2) the *Lancaster* court was faced with a claim for the *intentional* not *negligent* infliction of emotional distress. This distinction was touched on in *Adkins v. Seaboard System R.R.*, 821 F.2d 340 (6th Cir.1987). The *Adkins* decision noted that "the FELA has not been applied to any intentional torts lacking any physical dimension such as assault." *Id.* at 341. In rejecting the plaintiff's claim for emotional injury arising out of a conspiracy to fire him, the court held, "this claim of an intentional tort resulting in a purely emotional injury is not cognizable under the ·FELA." *Id.* at 342. Interestingly, the court added, "[w]e note that the Court in *Buell* referred only to *negligent* conduct as giving rise to an FELA claim." *Id.* at 341 (emphasis in original). Therefore, this court finds that *Lancaster* does not lend support to Conrail's position.

The same reasoning may be utilized to distinguish two additional cases to which Conrail cites. In both *Brady v. Penn Central Transp. Co.*, 406 F.Supp. 1239 (S.D.N.Y.1975); and *McSorley v. Consolidated Rail Corp.*, 581 F.Supp. 642 (S.D.N.Y. 1984), the courts dealt with intentional torts. Here, in contrast, the allegation is one of negligence not intentional harm.

Conrail also cites to *Bullard v. Central Vermont Ry.*, 565 F.2d 193 (1st Cir.1977), and to a line of cases following *Bullard*, to bolster its contention that emotional injury alone is not actionable. In *Bullard*, the First Circuit held that emotional injury unaccompanied by physical impact is not cognizable under the FELA. *Id.* at 197. The *Bullard* decision was relied upon in *Finn v. Consolidated Rail Corp.*, 622 F.Supp. 41 (D.Mass.1985), *aff'd on other grounds*, 782 F.2d 13 (1st Cir.1986). In *Finn*, the plaintiff claimed that the decedent committed suicide because the defendant allegedly made a record keeping error. "Here there was no physical injury." *Id.* at 43. The court cited *Bullard* and added "[s]ummary judgment must be granted in favor of de-

---

**3.** The Jones Act and the FELA share the identical test for employer liability. 46 U.S.C. § 688 (1982); *Ferguson v. Moore–McCormack Lines,*

352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957).

fendant Conrail." *Id.* Another case relying on *Bullard* is *Moody v. Maine Cent. R.R.*, 620 F.Supp. 1472 (D.Me.1985). In *Moody*, the plaintiff sought compensation for psychological disturbance arising out of alleged harassment by his employer. The court dismissed the complaint because "[g]enerally, there can be no recovery for emotional disturbance under the FELA without some *precipitating* physical injury." *Id.* at 1473 (emphasis in original).

On appeal, the appellate court affirmed the district court but on different grounds. *Moody*, 823 F.2d 693 (1st Cir.1987). The court affirmed because there was a lack of evidence showing causation. "The record does not contain any medical opinion as to causation from any one of the numerous doctors whom plaintiff has consulted, and there is no indication that such evidence is available." *Id.* at 696. However, the court expressed reservations about its *Bullard* decision. "The second impact of *Buell* is that, *at the very least*, it throws doubt on the doctrine attributed to us in *Bullard* that damages may not be awarded for mental or emotional injuries unaccompanied by physical injury." *Id.* at 694 (emphasis added).

Consequently, the court finds the decisions cited by Conrail unpersuasive and concludes that the injury alleged is cognizable under the FELA.

(b) *The plaintiff's work involved interstate transport.*

It is undisputed that Halko's work involved interstate commercial transport. This part of the test is easily satisfied.

(c) *Conrail's negligence.*

In order to recover under the FELA, the employee must show that the employer was negligent. The court's analysis here undertakes a twofold approach. One, whether Conrail owed a duty to Halko to prevent the alleged harassment, and two, what the scope of that duty was in terms of foreseeability.

In reference to the duty owed to Halko, Conrail clearly owed him a safe place in which to work. *Bailey v. Central Ver-*

*mont Ry.*, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943).

Turning to the scope of that duty, reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence. *Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *Scocozza v. Erie R. Co.*, 171 F.2d 745, 746–47 (2d Cir.), *cert. denied*, 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949). The court will be guided by the principle that it "is well established that the role of the jury is significantly greater in Jones Act and FELA cases than in common law negligence actions. The right of the jury to pass upon the question of fault and causation must be most liberally viewed." *Johannessen v. Gulf Trading & Transp. Co.*, 633 F.2d 653, 656 (2d Cir. 1980).

As to whether the suicide was foreseeable to Conrail, the Supreme Court has held that a railroad is liable for unexpectedly severe or even unlikely consequences of the wrongdoing. *Gallick*, 372 U.S. 108, 83 S.Ct. 659.

This circuit has made its position quite clear. "[F]oreseeability of harm is no less a matter generally left to the jury's broad decision than any other part of the requisite proof to recover under the FELA." *Burns v. Penn Central Co.*, 519 F.2d 512, 514 (2d Cir.1975). In *Burns*, the appellate court reversed the district court's granting of the railroad's motion for a directed verdict based on the alleged lack of foreseeability. In *Burns*, the plaintiff brought an action for the death of an employee caused by rifle shots. The court found that "[b]ased on the railroad's actual knowledge of stonings in the vicinity in recent months and its constructive (and indubitably actual) knowledge of the generally dangerous conditions prevailing in the neighborhood in which the fatality transpired, the jury would have acted well within its authority under the FELA by returning a verdict for Mrs. Burns." *Id.* at 514–15.

 In this case, plaintiff has presented evidence tending to show that Conrail was aware of the character and propensities of

various supervisors. Under the liberal FELA standard, can the court conclude that a jury would not find foreseeability? The answer is clearly no. Therefore, the court finds that the injury was foreseeable to Conrail.

Conrail cites to *Barilla v. Atchison, Topeka and Santa Fe Ry.*, 635 F. Supp. 1057 (D.Ariz.1986), for the proposition that suicide is not foreseeable under the FELA. The *Barilla* court held "suicide by a railroad employee is not a proximate cause cognizable in an FELA action nor intended to be remedied by the FELA." *Id.* at 1059. This court is not persuaded by *Barilla* for two reasons. First, the court has searched in vain for some authority upon which the *Barilla* court relied. Second, "a district court decision does not 'clearly establish' the law even of its own circuit, much less that of other circuits." *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir.1987).

Conrail argues that Halko's suicide is an intervening cause which breaks the chain of causation and releases it from liability for Halko's death. In rejecting this argument, the court notes "that FELA jurisprudence gleans guidance from common law developments...." *Buell*, — U.S. at —, 107 S.Ct. at 1417. The common law generally allows a recovery for suicide when there is an uncontrollable impulse to take one's life.

Prosser has characterized the law as follows:

Some difficulty has arisen in cases where the injured person becomes insane and commits suicide. Although there are cases to the contrary, it is the prevailing view that when insanity prevents one from realizing the nature of one's act or controlling one's conduct, the suicide is to be regarded as a direct result, and no intervening force at all, or else as a normal incident of the consequences inflicted, for which the defendant will be liable. The situation is the same as if one should hurt oneself during unconsciousness or delirium brought on by the injury. But if one is sane, or if the suicide is during a lucid interval, when one is in full command of all faculties, but life has become unendurable by reason of the injury, it is agreed in negligence cases that the voluntary choice of suicide is an abnormal thing, which supersedes the defendant's liability.

Prosser at 310–11.

This same approach is taken by the Restatement (Second) of Torts § 455 (1965). Section 455 discusses the issue in terms of the plaintiff's "insanity" or "delirium."

■ Thus, suicide is actionable under the FELA when the suicide is committed in a state of insanity. *Nelson v. Seaboard Coast Line R. Co.*, 398 So.2d 980 (Fla. 1st DCA 1981). Therefore, if Halko's suicide was the result of mental anguish which prevented him from exercising restraint or from truly understanding his actions, it was not a superseding cause thereby breaking the causal link. However, if Halko was cognizant of the nature of his act or able to control his conduct, no liability would attach to Conrail.

Interestingly, the most recent trend is to place less emphasis on the mental state and more on the causal connection. *Tate v. Canonica*, 180 Cal.App.2d 898, 5 Cal.Rptr. 28 (1960); *Zygmaniak v. Kawasaki Motors Corp. U.S.A.*, 131 N.J.Super. 403, 330 A.2d 56 (1974); *Fuller v. Preis*, 35 N.Y.2d 425, 363 N.Y.S.2d 568, 322 N.E.2d 263 (1974). In *Fuller*, the court commented that "recovery for negligence leading to the victim's death by suicide should perhaps, in some circumstances, be had even absent proof of a specific mental disease or even an irresistible impulse provided there is significant causal connection." *Id.*, 35 N.Y.2d at 429–30, 363 N.Y.S.2d at 572, 322 N.E.2d at 266.

■ The court does not have to choose which standard applies. Even under the stricter standard which requires that in order for suicide to be actionable the victim must have been insane, the court cannot dismiss the suit. Based upon the record there is certainly evidence of a deterioration in Halko's mental state. The question of whether the state of mind led to an uncontrollable impulse is far from clear and therefore is for a jury to determine.

Thus, it would be inappropriate to remove the issue of Halko's mental condition from the jury.

(d) *Conrail's negligence played a role in the injury.*

The standard governing our appraisal of the proofs was set forth by the Supreme Court in *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). The Court stated:

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

*Id.* at 506–07, 77 S.Ct. at 448–49.

In essence, this test has "reduce[d] the extent of the negligence required, as well as the quantum of proof necessary to establish it, to the 'vanishing point.'" Prosser at 579. Under this standard, only a slight amount of evidence is needed to raise a jury question. In addition, the court is mindful that an integral part of the FELA remedy is a jury trial. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962).

In examining the proofs offered by the plaintiff, the court notes that the analysis in an FELA action is markedly different than in common law negligence suits. The court will only look to see if a jury can find any causation between Conrail's negligence and the injury. *Shepard v. New York, N.H. & H.R.R.*, 300 F.2d 129 (2d Cir.1962); *Lindauer v. New York Cent. R.R.*, 408 F.2d 638 (2d Cir.1969).

Plaintiff has presented the court with unrebutted expert medical testimony. Dr. Lawrence I. Kaplan reviewed the record and arrived at the following conclusion:

The emotional background and interpersonal relationships of this patient within his family setting, alluded to in the suicide tape, undoubtedly made him more vulnerable to the severe stresses placed upon him in his employment situation, but, assuming the accuracy of the events which occurred in his employment status prior to his suicide attempts, it must be concluded that those stressful phenomena were the proximate cause of the severe mental disturbance and subsequent suicide.

Pl. Exh. V.

■ The court has reviewed the evidence presented and concludes that a jury reasonably could find that Conrail's negligence played a role in causing Halko's injury. Some of the evidence that a jury can infer from is the following. First, the internal Conrail memorandum which described Lisk as unfit to be a foreman. Second, the letter to Wuelfing referring to the paycheck shortages which admonished Wuelfing to "watch closely." Third, the expert testimony of Dr. Kaplan which concluded that the harassment played a role in Halko's suicide. Thus, a jury could determine that Conrail should not have retained Lisk. It could also conclude that Halko was the victim of a lengthy period of torment. It could also conclude that the injury was foreseeable to Conrail. In sum, a reasonable jury could attribute "some" fault to Conrail for Halko's death. Since the plaintiff has presented evidence upon which a jury could find negligence, the court cannot deprive plaintiff of a jury trial by dismissing the action.

*The Motion of NJT*

■ As previously stated, NJT also moves to dismiss the wrongful death claim against it. Plaintiff alleges that "NJ Transit knew, through the Conrail employees it hired, of the protracted period of harassment, intimidation and threats suffered by the decedent, Edward Halko." Pl. Brief at

**144**

39. In order for NJT to be liable, it must at a minimum, be found negligent. As discussed above, foreseeability of harm is a crucial component of negligence. "While it is true that there is a strong federal policy in favor of letting juries decide FELA cases, FELA is not an insurance program. Claimants must at least offer some evidence that would support a finding of negligence." *O'Hara v. Long Island R.R.*, 665 F.2d 8, 9 (2d Cir.1981). In *O'Hara* the Second Circuit affirmed the district court's dismissal of an FELA action because the plaintiff did not show that the defendant had notice of the dangerous condition. The court notes that before a jury can find NJT negligent, plaintiff would have to present evidence that NJT had knowledge of the disposition and nature of the supervisors prior to their affiliation with NJT or during the three days they worked for NJT. The actions of Conrail's employees cannot be attributed to NJT. *Milhurst Milling & Drying Co. v. Automobile Ins. Co.*, 31 N.J.Super. 424, 107 A.2d 46 (1954). Moreover, plaintiff has failed to provide "proof that any of defendant's management or supervisory personnel knew of such goings on in the three days decedent worked for N.J. Transit in time to promulgate any rules or regulations to meet the situation...." NJT's Memorandum at 4. Since Halko worked for NJT for merely three days and coupled with the complete absence of evidence indicating NJT was aware of the alleged harassment, the plaintiff has failed to show that NJT was negligent. Plaintiff has failed to offer any evidence indicating that NJT knew or should have known about the various employees who allegedly harassed Halko. The record is void of such evidence and, therefore, the Court determines that no reasonable jury could find NJT negligent even under the liberal FELA standard. Consequently, NJT's motion to dismiss as to them is granted.

## CONCLUSION

For the reasons set forth above, the court finds that the alleged injury is actionable under the FELA. In addition, the plaintiff has produced sufficient evidence

of Conrail's negligence to raise questions of fact for a jury to consider. However, plaintiff has failed to present evidence of negligence on behalf of NJT. Consequently, Conrail's motion for partial summary judgment dismissing the second claim is denied. NJT's motion to dismiss the claim is granted.

So ordered.