DIXIE B. ROBB, Plaintiff Below, Appellant, v. THE PENNSYLVANIA RAILROAD COMPANY, a corporation of the Commonwealth of Pennsylvania, Defendant Below, Appellee.

*(May* 28,1965)

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

William E. Wiggin, of Richards, Layton & Finger, for plaintiff below, appellant.

*Thomas G. Hughes,* of Berl, Potter & Anderson, for defendant below, appellee.

Supreme Court of the State of Delaware, No. 97, 1964.

HERRMANN, Justice:

The question before us for decision is this: May the plaintiff recover for the physical consequences of fright caused by the negligence of the defendant, the plaintiff being within the immediate zone of physical danger created by such negligence, although there was no contemporaneous bodily impact?

Considering the record in the light most favorable to the plaintiff, the facts may be thus summarized:

A private lane leading to the home of the plaintiff, Dixie B. Robb, was intersected by a railroad right-of-way leased to the defendant, The Pennsylvania Railroad Company. On March 11, 1961,

the plaintiff was driving an automobile up the lane toward her home when the vehicle stalled at the railroad grade crossing. A rut about a foot deep had been negligently permitted by the defendant to form at the crossing. The rear wheels of the automobile lodged in the rut and, although the plaintiff tried to move the vehicle for several minutes, she was unable to do so. While thus engaged in attempting to move the vehicle, the plaintiff saw the defendant's train bearing down upon her. With only seconds to spare, she jumped from the stalled vehicle and fled for her life. Immediately thereafter, the locomotive collided with the vehicle, hurled it into the air and demolished it. The plaintiff was standing within a few feet of the track when the collision occurred and her face was covered with train soot and dirt. However—and this is the nub of the problem—she was not touched by the train; there was no bodily impact; and she suffered no contemporaneous physical injury. Nevertheless, the plaintiff was greatly frightened and emotionally disturbed by the accident as the result of which she sustained shock to her nervous system. The fright and nervous shock resulted in physical injuries including cessation of lactation which interfered with the plaintiff's ability to nurse and otherwise care for her infant child. Her nervous and general physical condition resulting from the accident also obliged the plaintiff to abandon a horse breeding business and an article which she had been engaged to write for substantial compensation.

The defendant moved for summary judgment taking the position that, assuming the defendant's negligence and its proximate causation of the plaintiff's fright and nervous shock, she may not recover because there was no "impact" and contemporaneous physical injury. The trial judge agreed and granted summary judgment in the defendant's favor, stating: "In spite of a modern trend to the contrary in other jurisdictions, I feel compelled to follow the 'impact theory' in this matter by reason of well established precedents in this State." The plaintiff appeals, asserting that there are no such governing precedents in Delaware.

## I.

The question is still an open one in this State. Two reported Delaware cases and one unreported case border upon the field of

inquiry, but none really enter it.

In *Boyle v. Chandler*, 3 W.W. Harr. 323, 138 A. 273 (1927), the Superior Court ruled that there was no right of recovery for mental anguish of surviving relatives arising from the negligent failure of an undertaker to handle the body of the deceased in accordance with instructions, where no physical consequences of such mental suffering were shown. The case of *Larrimore v. Homeopathic Hospital Association of Delaware*, Del. 181 A.2d 573 (1962), affirming Del. Super., 176 A.2d 362 (1961), involved an action against a hospital for pain and suffering resulting from the alleged mistake of a nurse in injecting a drug by needle instead of orally as instructed by the attending physician. There, in considering the hospital's contention that no recovery for pain and suffering may be had because there was no actionable impact causing the pain and suffering, this court concluded that it did not reach, and was not required to pass upon, the question of the applicability of the "impact rule" because the pain and suffering were the direct result of the injection. The unreported Delaware case to which reference has been made is *Williamson v. Wilmington Housing Authority* (Superior Court of New Castle County, No. 1627 C.A. 1960) in which the Superior Court ruled that a mother may not recover for mental anguish she suffered when she came upon the accident scene and observed her child who had just been injured by a railroad train, the mother herself not having been in the path of danger.

It is obvious that the question here presented remains unresolved in this State. The instant case requires us to determine the matter.

## II.

The many decisions on the question are collected in the Annotations at 11 A.L.R. 1119, 40 A.L.R. 983, 76 A.L.R. 681, 98 A.L.R. 402 and 64 A.L.R.2d 100. The cases and their underlying principles have been discussed by distinguished scholars in this field of the law, including Goodrich, "Emotional Disturbance as Legal Damage", 20 Mich.L.Rev. 497; Smith, "Relation of Emotions to Injury and Disease", 30 Va.L.Rev. 193; Green, "Fright Cases", 27 Ill.L.Rev.

761; Magruder, "Mental and Emotional Disturbance in the Law of Torts", 49 Harv.L.Rev. 1033; Hallen, "Damages for Physical Injuries Resulting from Fright or Shock", 19 Va.L.Rev. 253; Bohlen, "Right to Recover for Injury Resulting from Negligence Without Impact", 41 Am. Law Reg. 141; Throckmorton, "Damages for Fright", 34 Harv.L.Rev. 260; Pollock on Torts (14th Ed.) 38; Prosser on Torts (3d Ed.) pp. 346, 350-352; and 2 Harper and James, The Law of Torts, Sec. 18.4, p. 1033.

There is sharp diversity of judicial opinion as to the right to recover for the physical consequences of fright in the absence of an impact and contemporaneous physical injury. The disparity is strikingly illustrated by the fact that the courts of our neighboring States of Maryland and Pennsylvania have reached, and continue to adhere to, opposite conclusions on the question. See *Bowman v. Williams*, 164 Md. 397, 165 A.182(1923); *Bosley v. Andrews*, 393 Pa. 161, 142 A.2d 263 (1958).

Two facets of the question are herewith eliminated from further consideration: First, it is accepted as settled that there can be no recovery for fright alone, not leading to bodily injury or sickness, arising from the negligence of another. See *Boyle v. Chandler*, supra; 2 Harper and James, The Law of Torts, p. 1031; 64 A.L.R.2d 100, 115, et seq. The plaintiff here concedes that proposition, stating however that she does not seek to recover for fright alone but for the physical consequences thereof. Secondly, we are not here concerned with the situation, such as existed in the Williamson case, wherein fright arose from the peril of another and the plaintiff was not in the path of the danger created by the negligence asserted. That segment of the problem has likewise given rise to contrariety of opinion. See *Bowman v. Williams*, supra; Annotations at 18 A.L.R.2d 220 and 64 A.L.R.2d 100, 148. We lay that question aside for another day, interesting as it may be, because the instant case does not require us to decide it.

The two schools of thought in the matter at hand evolved from two lines of cases originating about the turn of the century. The impact rule was established in America by the leading cases of *Ewing v.*

*Pittsburgh, etc. R. Co.,* 147 Pa. 40, 23 A. 340, 14 L.R.A. 666 (1892); *Mitchell v. Rochester R. Co.,* 151 N.Y. 107, 45 N.E. 354, 34 L.R.A. 781 (1896); and *Spade v. Lynn & Boston R. Co.,* 168 Mass. 285, 47 N.E. 88, 38 L.R.A. 512 (1897). These cases reflected the influence of the earlier English case of *Victorian Railways Commissioners v. Coultas,* 13 App. Cas. 222 (1888), recognized generally as the first notable case to espouse the impact rule. The Coultas case was quickly overruled, however by *Dulieu v. White & Sons,* 2 K.B. 669 (1901) which settled the law in England from then on in favor of recovery for physical injuries resulting from nervous shock induced by negligence, without actual impact. Nevertheless, the trend favoring the impact rule had attained a head-start in America by reason of the Ewing, Mitchell and Spade cases and it spread to numerous other jurisdictions under the influence of those cases. The doctrine denying recovery was not accepted universally, however. In *Purcell v. St. Paul, etc., Ry. Co.,* 48 Minn. 134, 50 N.W. 1034, 16 L.R.A. 203 (1892) and *Mack v. South Bound R. Co.,* 52 S.C. 323, 29 S.E. 905, 40 L.R.A. 679 (1897) the contrary rule was adopted; and, following those two leading cases, which represented the minority view for a long time, the courts of an increasing number of jurisdictions have been adopting the rule allowing recovery for injury due to fright induced by negligence without impact; until today the latter is recognized as the majority rule. See 2 Harper and James, The Law of Torts, p. 1034.

The impact rule is based, generally speaking, upon three propositions expounded in the Mitchell and Spade cases:

1) It is stated that since fright alone does not give rise to a cause of action, the consequences of fright will not give rise to a cause of action. This is now generally recognized to be a non-sequitur, want of damage being recognized as the reason that negligence causing mere fright is not actionable. It is now generally agreed, even in jurisdictions which have adopted the impact rule, that the gist of the action is the injury flowing from the negligence, whether operating through the medium of physical impact or nervous shock. See *Comstock v. Wilson,* 257 N.Y. 231, 177 N.E. 431, 76 A.L.R. 676 (1931); *Alabama Fuel &*

*Iron Co. v. Baladoni,* 15 Ala.App. 316, 73 So. 205 (1916).

2) It is stated that the physical consequences of fright are too remote and that the requisite causal connection is unprovable. See, e.g., *Ward v. West Jersey & S. R. Co.,* 65 N.J.L. 383, 47 A. 561 (1900). The fallacies of this ground of the impact rule, viewed in the light of growing medical knowledge, were well stated by Chief Justice Maltbie in *Orlo v. Connecticut Co.,* 128 Conn. 231, 21 A.2d 402 (1941). It was there pointed out that the early difficulty in tracing a resulting injury back through fright or nervous shock has been minimized by the advance of medical science; and that the line of cases permitting recovery for serious injuries resulting from fright, where there has been but a trivial impact in itself causing little or no injury, demonstrate that there is no insuperable difficulty in tracing causal connection between the wrongdoing and the injury via the fright. See also *Comstock v. Wilson,* supra.

3) It is stated that public policy and expediency demand that there be no recovery for the physical consequences of fright in the absence of a contemporaneous physical injury. See, e.g., *Mitchell v. Rochester R. Co.,* supra; *Huston v. Freemansburg Borough,* 212 Pa. 548, 61 A. 1022, 3 L.R.A., N.S., 49 (1905); *Bosley v. Andrews,* supra. In recent years, this has become the principal reason for denying recovery on the basis of the impact rule. In support of this argument, it is said that fright is a subjective state of mind, difficult to evaluate, and of such nature that proof by the claimant is too easy and disproof by the party charged too difficult, thus making it unsafe as a practical matter for the law to deal with such claims. This school of thought concludes that to permit recovery in such cases would open a "Pandora's Box" of fictitious and fraudulent claims involving speculative and conjectural damages with which the law and medical science cannot justly cope. See *Bosley v. Andrews,* supra. The expediency ground was termed a matter of "administrative policy" for each jurisdiction in the Restatement of the Law of Torts, Sec. 436, Caveat to Subsection (2). It is noteworthy that this Caveat was removed by the 1948 Supplement to the Restatement (p. 740) in recognition of the accelerating trend of the law away from the impact rule and of the

proven reliability of medical testimony necessary to establish the causal connection between negligence and an ultimate injury.

In considering the expediency ground, the Supreme Court of Connecticut said in the Orlo case, supra:

"* * * There is hardly more risk to the accomplishment of justice because of disparity in possibilities of proof in such situations than in those where mental suffering is allowed as an element of damage following a physical injury or recovery is permitted for the results of nervous shock provided there be some contemporaneous slight battery or physical injury. Certainly it is a very questionable position for a court to take, that because of the possibility of encouraging fictitious claims compensation should be denied those who have actually suffered serious injury through the negligence of another."

On the same point, the Supreme Court of Maryland had this to say in the Bowman case, supra:

"* * * These considerations undeniably tend to multiply fictitious or speculative claims, and to open to unscrupulous litigants a wide field for exploitation, but these difficulties are common, are surmountable, and so should not prevent the operation of the general and fundamental theory of the common law that there is a remedy for every substantial wrong. * * *"

And in *Battalla v. State,* 10 N.Y.2d 237 (219 N.Y.S.2d 34, 176 N.E.2d 729 (1961), the Court of Appeals of New York finally completed the repudiation of the Mitchell case, one of the original leading proponents of the impact rule, stating as to the public policy argument:

"* * * Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. 'The argument from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in *all* cases because in *some* a

fictitious injury may be urged as a real one.' *Green v. T. A. Shoemaker & Co.,* 111 Md. 69, 81, 73 A. 688, 692, 23 L.R.A., N.S., 667."

## III.

It is our opinion that the reasons for rejecting the impact rule far outweigh the reasons which have been advanced in its support.

The cause of action and proximate cause grounds for the rule have been discredited in the very jurisdictions which first gave them credence. As stated by Holmes, C. J., for the Supreme Judicial Court of Massachusetts, the Spade decision did not result from "a logical deduction from the general principles of liability in tort, but as a limitation of those principles upon purely practical grounds." *Smith v. Postal Telegraph Cable Co.,* 174 Mass. 576, 55 N.E. 380, 47 L.R.A. 323 (1899). Or, as stated by the same eminent jurist on another occasion, he deemed exemption from such damages to be "an arbitrary exception, based upon a notion of what is practicable." *Homans v. Boston Elevated R. Co.,* 180 Mass. 456, 62 N.E. 737, 57 L.R.A. 291 (1902). And, referring to the Mitchell case and the grounds here under consideration, Lehman, J., speaking for the New York Court of Appeals, stated: "Its conclusions cannot be tested by pure logic. The court recognized that its views of public policy to some extent dictated its decision," *Comstock v. Wilson,* supra. The repudiation by New York appears clearly in *Battalla v. State,* supra, where it is recorded that "the unanimous court in Comstock rejected all but the public policy arguments of the Mitchell decision." Similarly, in the third jurisdiction in which the impact rule had its origin, the cause of action and proximate cause grounds are no longer given as justifications for the doctrine. The Supreme Court of Pennsylvania relied wholly upon *stare decisis* and the public policy argument in its most recent consideration of the problem. See *Bosley v. Andrews,* supra.

If more were needed to warrant a declination to follow the cause of action and the proximate cause arguments, reference to the fictional and mechanical ends to which the impact rule has been carried would

suffice for the purpose. The most trivial bodily contact, itself causing little or no injury, has been considered sufficient to take a case out of the rule and permit recovery for serious physical injuries resulting from the accompanying fright. Token impact sufficient to satisfy the rule has been held to be a slight bump against the seat, *Homans v. Boston Elevated R. Co.,* supra; dust in the eyes, *Porter v. Del., L. & W. R. Co.,* 73 N.J.L. 405, 63 A. 860 (1906); inhalation of smoke, *Morton v. Stack,* 122 Ohio St. 115, 170 N.E. 869 (1930); a trifling burn, *Kentucky Traction & Term. Co. v. Roman's Guardian,* 232 Ky. 285, 23 S.W. 2d 272 (1929); Jostling in an automobile, *Israel v. Ulrich,* 114 Conn. 599, 159 A. 634 (1922); indeed any degree of physical impact, however slight, *Zelinsky v. Chimics,* 196 Pa. Super. 312, 175 A. 2d 351 (1961). See especially *Christy Bros. Circus v. Turnage,* 38 Ga. App. 581, 144 S.E. 680 (1928).

This leaves the public policy or expediency ground to support the impact rule. We think that ground untenable.

█ It is the duty of the courts to afford a remedy and redress for every substantial wrong. Part of our basic law is the mandate that "every man for an injury done him in his * * * person * * * shall have remedy by the due course of law * * *." Del. Const. Art. 1, Sec. 9, *Del. C.* Ann. Neither volume of cases, nor danger of fraudulent claims, nor difficulty of proof, will relieve the courts of their obligation in this regard. None of these problems are insuperable. Statistics fail to show that there has been a "flood" of such cases in those jurisdictions in which recovery is allowed;* but if there be increased litigation, the courts must willingly cope with the task. As to the danger of illusory and fictional claims, this is not a new problem; our courts deal constantly with claims for pain and suffering based upon subjective symptoms only; and the courts and the medical profession have been found equal to the danger. Fraudulent claims may be feigned in a slight-impact case as well as in a no-impact case. Likewise, the problems

---

*See Smith, "Relation of Emotions to Injury and Disease." 30 Va.L.Rev. 193, 302.

of adequacy of proof, for the avoidance of speculative and conjectural damages, are common to personal injury cases generally and are surmountable, being satisfactorily solved by our courts in case after case.

We are unwilling to accept a rule, or an expediency argument in support thereof, which results in the denial of a logical legal right and remedy in all cases because in some a fictitious injury may be urged or a difficult problem of the proof or disproof of speculative damage may be presented. Justice is not best served, we think, when compensation is denied to one who has suffered injury through the negligence of another merely because of the possibility of encouraging fictitious claims or speculative damages in other cases. Public policy requires the courts, with the aid of the legal and medical professions, to find ways and means to solve satisfactorily the problems thus presented—not expedient ways to avoid them. We recognize that "[e]xpediency may tip the scales when arguments are nicely balanced," *Woolford Realty Co. v. Rose,* 286 U.S. 319, 330, 52 S.Ct. 568, 570, 76 L.Ed. 1128; but, in our view, such nice balance no longer exists as to the subject matter.

Accordingly, we decline to adopt the impact rule, as urged by the defendant in this cause. The impact rule "is almost certainly destined for ultimate extinction, although it displays surprising vitality, and the process may not be a rapid one. * * * it seems clear that the courts which deny all remedy in such cases are fighting a rearguard action." Prosser on Torts (3d Ed.) pp. 351–352.

We hold, therefore, that where negligence *proximately* caused fright, in one within the immediate area of physical danger from that negligence, which in turn produced physical consequences such as would be elements of damage if a bodily injury had been suffered, the injured party is entitled to recover under an application of the prevailing principles of law as to negligence and proximate causation. Otherwise stated, where results, which are regarded as proper elements of recovery as a consequence of physical injury, are proximately caused by fright due to negligence, recovery by one in the immediate zone of

physical risk should be permitted. Compare Restatement of the Law of Torts, Sections 313, 436.

This view has the general approval of the writers on the subject and is now distinctly the majority rule. We are satisfied that it is the better rule, supported by reason, logic and fairness.

We conclude, therefore, that the Superior Court erred in the instant case in holding that the plaintiff's right to recover is barred by the impact rule. The plaintiff claims physical injuries resulting from fright proximately caused by the negligence of the defendant. She should have the opportunity to prove such injuries and to recover therefor if she succeeds. The summary judgment granted in favor of the defendant must be reversed and the cause remanded for further proceedings.