SUPERIOR COURT
OF THE
STATE OF DELAWARE

CHARLES E. BUTLER
JUDGE

December 16, 2016

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0656

David G. Culley, Esquire
Tybout Redfearn & Pell
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899

Richard Galperin, Esquire
Joshua H. Meyeroff, Esquire
Morris James, LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899

> **Re:** **Wesselman *v. Christiana Care Health Services, Inc.*
> C.A. No. N15C-04-127 CEB
> Upon Consideration of Defendant's Motion for Summary
> Judgment. GRANTED.**

Counsel:

There are a number of things that this case is, and a number that it is not. Sorting that out will get us to the heart of the matter, which takes us to a rather easy conclusion.

The story goes something like this: Plaintiff Wesselman went to an outpatient radiology clinic operated by defendant Christiana Care Health Services, Inc. ("Christiana"). She was there to get a CT scan performed and as part of that procedure, was required to drink some barium to get a contrast study done. She

1

As she sat up, Wesselman announced that she wasn't feeling well. Staff got her a wheelchair and wheeled her to the bathroom, where she had a bout of diarrhea. Plaintiff came out of the bathroom and she told staff she was still not feeling well. She called out sick for the rest of the day and called for her boyfriend to come take her home.

Meanwhile, Plaintiff went back to the bathroom, but this time she weakened to the point that she could not unlock the bathroom door when she wanted to exit. There followed a search for a key, a search rendered moot about five minutes later when plaintiff was able to finally unlock and open the door.

Twenty minutes later when boyfriend arrived, plaintiff was still feeling badly. The decision was made that she ought to head over to the hospital ER to be checked out. Boyfriend did not want to risk driving her in her condition, so plaintiff was transported by ambulance to the Christiana ER, where she was diagnosed with Lactic Acidosis, a condition that apparently cleared up with treatment at Christiana.

This is, pointedly, not a claim for medical negligence. So there is no allegation that anyone "missed" a diagnosis of Lactic Acidosis. It is not a claim against Christiana's Emergency Room or any of its hospital personnel and makes no claim of improper treatment while at Christiana hospital. Rather, the Complaint

2

comes in 2 Counts: Count 1 alleges "negligent infliction of emotional distress" and Count 2 alleges "Intentional infliction of emotional distress."

The "emotional distress" at issue here is spelled out in the negligent infliction count. It is said that defendant's agents a) failed to take her complaints seriously, b) failed to "stay by" her after she complained of weakness, c) failed to wait outside the bathroom, d) failed to produce a key to unlock the bathroom door, e) failed to follow 16 Del. C. §1007(b)[1] f) failed to take any action in response to her needs when she was lying on the floor in the bathroom and g) failed to immediately summon emergency personnel. Aside from the usual damage claims for pain and suffering, attorney fees, etc., plaintiff identifies "lightheadedness, weakness, nausea, rapid heartbeat and a dangerous drop in blood pressure" as specific elements of her damages.

And so, it bears repeating, this is not a complaint that alleges any medical negligence by any medical personnel. Rather, it is an infliction of emotional distress case that happens to have occurred at an outpatient medical facility.

In order for plaintiff to recover on a theory of "negligent" infliction of emotional distress, plaintiff must produce evidence sufficient for a jury to find 1)

---

[1] This Code provision requires the Department of Health and Social Services to adopt regulations ensuring hospital staff have ready access to patient bathrooms in response to an emergency. While certainly relevant to this dispute, the law was not in effect on the date of the incident.

negligence causing fright to another person, 2) the plaintiff was in the "zone of danger" of being frightened, and 2) injury to the plaintiff as a result.[2]

So. First question: what negligence? Negligence requires the identification of a duty, breach of the duty, and proximate causation of damages.[3] We can take it on faith that medical personnel had a duty of ordinary medical care to a client in its office. We can make it even easier, since this is not a claim of medical negligence, and say a business owner has a duty of ordinary care to business invitees.

Does a business owner owe a duty to its business invitees who ask to use the bathroom to stay with the invitee? If the invitee says she is not feeling well and needs to use the bathroom, does the duty heighten to standing watch outside the bathroom door? Plaintiff points us to no cases so holding and we have not found any suggesting such a duty. There is the case of *Brown v. Dover Downs, Inc.,*[4] but it is no help to plaintiff, because it holds that an innkeeper has no duty to provide a bathmat in a shower stall in which a hotel guest slipped and fell. The case does reference the "general proposition that a landowner owes a duty to business invitees to make the premises reasonably safe and to warn of any concealed or

---

[2] *See Spence v. Cherian*, 135 A.2d 1282 (Del. Super. Ct. 2016).

[3] *Duphily v. Delaware Elec. Co-op., Inc.*, 662 A.2d 821 (Del. 1995) (citing *Culver v. Bennett*, 588 A.2d 1094, 1096–97 (Del.1991)).

[4] 2011 WL 3907536 (Del. Super. Ct. August 30, 2011).

4

latent dangers." [5] Properly transposed, we suppose the argument has to be that a landowner has a duty to business invitees to make sure the bathroom door locks and unlocks properly and to warn an invitee that the lock is malfunctioning somehow.    But here, there is no allegation of a malfunctioning lock; the lock worked just fine.  So for plaintiff's argument to work, the duty has to be not only that the door and its lock work properly but also that the landowner keep ready access to the key in the event something goes awry with the bathroom's occupant. While it's true that "Accidents Will Happen,"[6] the Court will not impute a duty upon business owners to have a bathroom key available to open a locked door in less than five minutes.  Perhaps there is an outer number of minutes of key searching for a spare bathroom key, after which the business owner's inability to locate said key will breach a duty of "reasonable safety," but five is not it.

Moreover, plaintiff's bathroom injuries are too amorphous to be substantially considered.   She complains that no one took her complaints "seriously," but the "seriosity" paid is not a tort, nor does she point to any action or inaction taken that would/should have been taken had defendant taken her more

---

[5] *Id.* at 2; In *Wood v. Rodeway Inn*, 2015 WL 994855 (Del. Super. Ct. March 4, 2015) the Superior Court refused to dismiss a bathtub complaint by a plaintiff who fell and broke his back alleging "some foreign substance" in the tub.  But the case is not only procedurally inapposite, coming as it did on a motion to dismiss, but also alleged "real" damage from a "real" substance that did not belong there.  It is unfortunate that our evolving "law of the bathroom" remains rather "tub centric" and has not, so far as we can determine, moved on to sinks and doors.

[6] Elvis Costello and the Attractions, Armed Forces (Columbia Records 1979).

seriously. She complains that defendant's employees didn't wait outside the door or immediately summon emergency personnel. The record is clear that defendant's personnel did summon emergency personnel, within a few minutes, but perhaps not "immediately." On the other hand, plaintiff has not identified any harm she suffered by any lack of immediacy, or what might have been accomplished by posting a sentry outside the door while she dealt with her diarrhea. These complaints are at best make weight elements of some overarching duty that was breached here, a duty that has not been identified by plaintiff or discerned by the Court.

Even if the Court were to torture these facts and the case law into some duty on the part of the defendant, plaintiff does not allege that her bathroom difficulties resulted in any identifiable damage. She says she felt weak, dizzy, nauseous, etc., but she identified these conditions before she went into the bathroom, not as a result of her occupation. Lacking any identified harm suffered directly as a result of the few minutes she spent in the bathroom waiting for a key, she invites the fact finder to decide that the whole experience ought to be compensable, by some dollar figure, that she declines to further explicate.

This is where cases based solely on "infliction of emotional distress" become most problematic. Plaintiff seeks a financial recovery over an incident that she does not allege resulted in any "physical injury" to her person. While there

6

does admittedly exist a window into which liability may be found, it is quite narrow.[7] A defendant's conduct must be of the "outrageous" variety, ordinary negligence will not do. Here, no part of the plaintiff's complaint even remotely suggests that defendants' agents kept her locked in the bathroom deliberately, or for some weird, untoward purpose. Barring some affirmative showing, particularly at this point in the litigation after full discovery has been effected, that defendant's conduct falls within the ambit of "outrageous," the Court will not force the defendant into a trial in order for plaintiff to give it one last try in front of a jury.

Lest we be considered unduly harsh on plaintiff, it should be noted that hospital bathroom doors need an external lock release mechanism and there have indeed been tragic consequences when the door can remain locked from the inside. In 2011, 14 year old Christina Atkins died after hospital personnel were unable to locate a key to the bathroom in which she was locked.[8] The incident led the General Assembly to pass "Christina's Law,"[9] requiring "hospital staff" to have ready access to a locked bathroom door. While plaintiff's complaint here may not

---

[7] We note some ambiguity in the cases regarding the availability of "emotional distress" damages in the absence of physical injury, *see, e.g., Robb v. Pennsylvania R. Co.,* 210 A.2d 709 (Del. 1965*), Cummings v. Pinder,* 574 A.2d 843 (Del. 1990), *Tackett v. State Farm Fire and Cas. Ins. Co.,* 653 A.2d 254 (Del. 1995). The parties have not fully briefed the question here, perhaps because the complaint is so far short of the mark as to not seriously call the issue into question. We will therefore save a more searching inquiry for another, more deserving case.

[8] *Atkins v. Beebe Medical Center, Inc.,* S12C-09-002 THG.

[9] H.B. 129, 147th Gen. Assemb., Reg. Sess. (Del. 2014).

7

have involved a hospital and resulted in at best theoretical damages, the entire episode could indeed have ended quite badly. On a different date, with somewhat different facts, Plaintiff's claim might proceed to trial. But they are not different and the Court must rule on the record before it.

For all of the foregoing reasons, the Court will grant summary judgment to the defense.

**IT IS SO ORDERED**.

Judge Charles E. Butler