# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| MEREDITH AND BRANDON BOAS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N22C-08-066 PAW |
| CHRISTIANA CARE HEALTH SERVICES, INC., AND CHRISTIANA CARE HEALTH SYSTEM, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

Submitted: May 5, 2023
Decided: July 26, 2023

## MEMORANDUM OPINION AND ORDER

*Upon Defendants' Motion to Dismiss Plaintiffs' Amended Complaint:*
**DENIED in part and GRANTED in part**.

Raeann Warner, Esq., of JACOBS & CRUMPLAR, P.A., *Attorney for Plaintiffs*.

John D. Balaguer, Esq., and Lindsey E. Imbrogno, Esq. of BALAGUER, MILEWSKI, & IMBROGNO, *Attorneys for Defendants*.

**WINSTON, J.**

## I.    INTRODUCTION

This civil action involves claims for the Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED"). Plaintiffs Meredith and Brandon Boas allege that agents of Defendants Christiana Care Health Services, Inc. and Christiana Care Health System, Inc. performed an autopsy of their stillborn baby in defiance of Plaintiffs' oral and written instructions that no autopsy be performed. Plaintiffs contend they suffered emotional distress and physical injuries when they discovered the fetal remains were autopsied and seek compensatory and punitive damages. Defendants have moved to dismiss Plaintiffs' Amended Complaint (the "Motion"). For the following reasons, the Defendants' Motion is denied as to the IIED claim and granted as to the NIED claim.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2021, Plaintiffs were expecting their first child.[1] On May 6, 2021, at 16.1 weeks pregnant, Plaintiff Meredith Boas began leaking amniotic fluid.[2] Mrs. Boas was admitted to a medical facility maintained by Defendants ("Christiana Care Hospital") and was diagnosed with preterm premature rupture of her membranes.[3]

---

[1] Am. Compl. ¶ 6.
[2] *Id.*
[3] *Id.*

Mrs. Boas, wishing the fetal remains to remain whole and intact, elected to induce labor and deliver vaginally.[4] Approximately three hours later, she delivered the fetus.[5] Plaintiffs indicated to their doctor that they wanted private cremation/funeral services for the fetus and no fetal autopsy unless there were visual abnormalities.[6] Plaintiffs, when filling out the autopsy consent paperwork, declined an autopsy.[7]

Before leaving the hospital, Plaintiffs were told the fetal remains would be taken to the morgue where it would await transport to the funeral home.[8] Instead, pursuant to hospital policy requiring an autopsy of any baby who died under 20 weeks regardless of parental directives to the contrary, the fetal remains were taken to pathology where an autopsy was performed.[9] The hospital's policy was not communicated to Plaintiffs until several months after the autopsy was performed.[10]

Upon discovering the fetal remains were autopsied, Plaintiffs experienced extreme depression, sadness, anger, sleeplessness, and intrusive, unwanted thoughts.[11] In addition, they allege autopsy caused them both deep periods of

---

[4] *Id.*
[5] *Id.* ¶ 7.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 7.
[8] *Id.* ¶ 8.
[9] *Id.* ¶¶ 12-14.
[10] *Id.* ¶ 14.
[11] *Id.* ¶ 16.

3

depression, created a deep distrust of the medical field, and caused them to question whether they would attempt to become parents again.[12]

Plaintiffs initiated this action against Defendants on August 8, 2022.[13] Pursuant to Superior Court Civil Rule 15(a), Plaintiffs filed an Amended Complaint on December 6, 2022.[14] Plaintiffs' Amended Complaint alleges one count of IIED and one count of NIED.[15] Pursuant to Superior Court Civil Rule 12(b)(6), Defendants filed the instant Motion, and, on April 18, 2023, the Court held oral argument. After argument, the Court requested supplemental briefing on the relevancy of this Court's opinion in *Lupo v. Medical Center of Delaware*[16] to Plaintiffs' NIED claim.[17]

## III.   STANDARD OF REVIEW

A party may move to dismiss a complaint under Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[18] Upon a Rule 12(b)(6) motion, the Court: (1) accepts all well-pled factual allegations as true; (2) credits vague allegations if they give the opposing party notice of the claim; (3)

---

[12] *Id.*
[13] *See* Compl.
[14] *See* Am. Compl.
[15] *Id.* ¶¶17-30.
[16] 1996 WL 111132, at *1 (Del. Super. Ct. Feb. 7, 1996).
[17] *See* D.I. 22.
[18] Super. Ct. Civ. R. 12(b)(6).

draws all reasonable inferences in favor of the non-moving party; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[19]

## IV.  DISCUSSION

### A.  Plaintiffs State a Claim for IIED

Defendants contend Plaintiffs have failed to allege conduct that is extreme and outrageous.[20] Specifically, they argue that, absent any evidence the fetal remains were abused or the autopsy was performed in an indecent manner, a fetal autopsy, even against the express wishes of the parents, does not rise to the level of being "'beyond all possible bounds of decency.'"[21] Further, Defendants contend Plaintiffs "do not allege any facts which reasonably imply that [Christiana Care Hospital] acted with malice or reckless indifference," and, thus, Plaintiffs' claims for punitive damages must be dismissed.[22] Plaintiffs respond by asserting the conduct alleged could support a claim of IIED and that the question of Defendants' recklessness is an issue of fact for the jury to decide.[23]

The elements necessary to state a claim for IIED are defined by Section 46 of the Restatement (Second) of Torts (the "Restatement").[24] The Restatement defines

---

[19] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[20] Defs.' Mot. to Dismiss ¶ 7.
[21] *Id.* ¶ 8.
[22] *Id.* ¶ 13.
[23] Pls.' Response to Defs.' Mot. to Dismiss ¶¶ 4-5.
[24] *Spence v. Cherian*, 135 A.3d 1282, 1288 (Del. Super. Ct. 2016) (*citing Mattern v. Hudson*, 532 A.2d 85, 85-86 (Del. Super. Ct. 1987); *Esposito v. Townsend*, 2013 WL 493321, at *6 (Del. Super. Ct. Feb. 8, 2013)).

IIED, *inter alia*, as, "extreme and outrageous conduct [that], intentionally or recklessly causes severe emotional distress to another."[25] One is subject to liability for causing such emotional distress and any bodily harm to the other results from the emotional distress.[26] Liability for IIED only lies when the defendant's "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[27] "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."[28] It is the Court's gatekeeping responsibility to determine whether conduct is so extreme and outrageous as to permit recovery.[29] However, "[i]f reasonable minds [] differ, the question of whether the conduct is extreme and outrageous is for the jury."[30]

Punitive damages may be awarded if the "defendant's conduct is 'outrageous,' because of 'evil motive' or 'reckless indifference to the rights of others.'"[31] This

---

[25] Restatement (Second) of Torts § 46(1) (1965).
[26] *Id.*
[27] *Id.* cmt. d.
[28] *Id.* cmt. e.
[29] *Collins v. African Methodist Episocopal Zion Church*, 2006 WL 1579718, at *2 (Del. Super. Ct. Mar. 31, 2006) (*citing Farmer v. Wilson*, 1992 WL 331450, at *4 (Del. Super. Ct. Sept. 29, 1992)).
[30] *Hunt ex rel. DeSombre v. Del.,* 69 A.3d 360, 367 (Del. 2013); Restatement (Second) of Torts § 46 cmt. h (1965).
[31] *Rhinehardt v. Bright*, 2006 WL 2220972, at *5 (Del. Super. Ct. May 19, 2006) (*quoting Jardel Co. Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987)).

conduct refers to a distinct state of mind – one a conscious awareness, the other a conscious indifference.[32] Both states of mind, however, require that the defendant foresee that his conduct threatens particular harm to the plaintiff.[33]

Plaintiffs allege that the fetal autopsy occurred without their consent; after they repeatedly made it known to hospital agents that they desired no autopsy; after their pronouncement that they desired private cremation/funeral services for the fetus; and after they received assurances from hospital staff no autopsy would be performed. Plaintiffs clearly expressed their desire to keep the fetal remains whole and intact for burial/cremation services to Defendants. Defendants, while promising no fetal autopsy would be performed, performed one anyway.[34] In addition, Plaintiffs allege, upon review of the medical records, Mrs. Boas discovered "the fetus [was] eviscerated," and "read how they took him apart after she had seen her son for the last time as whole and intact."[35] Specifically, Defendants' allegedly "cut up [the fetus] and weighed his heart, his lungs, his spleen, and poked around his organs."[36]

Although this Court sits as a gatekeeper, reasonable minds can differ as to whether such conduct is sufficient to support a claim for IIED and deny Defendants'

---

[32] *Jardel Co. Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987).
[33] *Id.* at 529-530.
[34] Am. Compl. ¶ 13.
[35] *Id.*
[36] *Id.*

7

Motion on this count. For the same reasons, Plaintiffs have adequately pled Defendants' conduct was reckless and deny Defendants' Motion with respect to punitive damages.

### B. Plaintiffs Fail to State a Claim for NIED

The elements required for a claim of negligent infliction of emotional distress are: (1) negligence causing fright to someone; (2) that was in the 'zone of danger;' which, (3) produces physical consequences to that person because of the contemporaneous shock.[37] Defendants contend Plaintiffs failed to plead all three elements.[38] The Court finds, however, that Plaintiffs have adequately alleged that Defendants' negligence proximately caused Plaintiffs to suffer physical injury in the form of depression and sleeplessness.[39] Therefore, the central issue is the application of the zone of danger element.

#### 1. Zone of Danger: *Robb*, *Lupo*, and *Armstrong*

##### a) *Robb v. Pennsylvania Railroad Co.*

Without relying on any Delaware case law, Plaintiffs request the Court "not require Plaintiffs to be in the 'zone of danger' of physical injury."[40] The "zone of

---

[37] *Rhinehardt*, 2006 WL 2220972, at *5 (citations omitted).

[38] Defs.' Mot. to Dismiss ¶¶ 10-12.

[39] Am. Compl. ¶ 16. *See Fanean v. Rite Aid Corp. of Delaware, Inc.*, 984 A.2d 812, 820 (Del. Super. Ct. 2009) (finding that allegations of depression and anxiety are recoverable physical injuries); *Elsey-Jones v. Gullion*, 2018 WL 2727574, at *5 (Del. Super. Ct. June 5, 2018) ("Allegations of 'sleeplessness and nausea' have been found sufficient to support emotional distress for negligent infliction for emotional distress on a motion to dismiss standard.") (*citing Drainer v. O'Donnell*, 1995 WL 338700, at *3 (Del. Super. May 30, 1995)).

[40] Pls.' Response to Defs.' Mot. to Dismiss ¶ 8.

danger" prong was adopted by the Delaware Supreme Court in *Robb v. Pennsylvania Railroad Co.*[41] Specifically, the plaintiff in *Robb* claimed physical injury arose from the fright caused by the alleged negligence of the defendant railroad company which caused her car to stall on the tracks.[42] Zone of danger is defined as "that area where the negligent conduct causes the victim to fear for his or her own safety."[43] The Court ruled, in the context of a sudden, unexpected incident, zone of danger is an element of NIED.[44] However, the Court acknowledged that it was not "concerned with the situation … wherein fright arose from the peril of another and plaintiff was not in the path of the danger created by the negligence asserted."[45] Since *Robb*, this Court has addressed the application of zone of danger element where plaintiff alleges direct injuries due to defendant's negligence outside of the sudden, unexpected incident context[46] and the issue left open in *Robb*.[47]

### b) *Lupo v. Medical Center of Delaware, Inc.*

In *Lupo*, plaintiffs alleged the defendant hospital told plaintiffs that their child was stillborn, when in fact, the child was born alive and lived for two hours.[48]

---

[41] 210 A.2d 709, 711 (Del. 1965).
[42] *Id.*
[43] *Elsey-Jones*, 2018 WL 2727574, at *4.
[44] *Robb,* 210 A.2d at 711.
[45] *Id.*
[46] *Lupo v. Medical Center of Delaware, Inc.*, 1996 WL 111132, at *3 (Del. Super. Ct. Feb. 7, 1996).
[47] *Armstrong v. A.I. DuPont Hospital for Children*, 60 A.3d 414, 424 (Del. Super. Ct. 2012).
[48] *Lupo*, 1996 WL 111132, at *1.

Plaintiffs contended they suffered emotional distress due to the "lost opportunity to spend time with their baby while it was alive" which caused plaintiffs' physical injuries in the form of sleeplessness, headaches, crying spells, rage, nervousness, guilt, eating disorders, and depression.[49] The *Lupo* court explained that "the instant case is distinct from those emotional distress cases where an injury to a third person caused plaintiff mental anguish or where sudden, unexpected incident caused plaintiff fright or shock."[50] Thus, this Court found the zone of danger element not applicable where plaintiffs allege direct injuries due to defendant's negligence.[51]

### c)  *Armstrong v. A.I. DuPont Hospital for Children*

In *Armstrong*, plaintiffs' son underwent a tonsillectomy.[52] After surgery, defendant hospital discharged the child, who plaintiffs allege, was still unconscious from the surgery and unresponsive.[53] Approximately two hours after being discharged, plaintiffs found their son unresponsive and not breathing.[54] In addressing the issue left open in *Robb*, the Court held that, when fright arises from the peril of another and plaintiff is not in the zone of danger, "a claim for [NIED] is a viable cause of action where the negligence is continuing and occurs in the third

---

[49] *Id*. at *2.
[50] *Id*. at *3.
[51] *Id.*
[52] *Armstrong*, 60 A.3d at 416.
[53] *Id.*
[54] *Id*. at 417.

10

person's presence."[55]  Thus, the *Armstong* court extended the zone of danger to apply to plaintiffs as third parties who witnessed the active peril caused by the negligence of others.

### 2.        Plaintiffs' Zone of Danger

Both *Lupo* and *Armstrong* are distinguishable.  Plaintiffs claim Defendants' autopsy performance on their fetus, against their express consent, caused them emotional distress, and their fright arose when they read Mrs. Boas's medical records.  Hence, Plaintiffs' fright arose from the peril of another, their fetus.  *Lupo* is not applicable because Plaintiffs do not allege direct injuries.  Next, unlike the plaintiffs in *Armstrong*, Plaintiffs do not allege the negligence occurred in their presence or Defendants' negligence continued.  Therefore, the zone of danger cannot be extended to apply to Plaintiffs.  Therefore, as set forth in *Robb*, Plaintiffs must allege that they were in the zone of physical danger.  Plaintiffs, however, failed to adequately plead that they were in the zone of danger.[56]  Accordingly, Plaintiffs failed to state a claim for NIED.

---

[55] *Id*. at 424.

[56] *Fanean v. Rite Aid Corp. of Delaware, Inc.* is also distinguishable.  In *Fanean*, this Court explained that plaintiffs were in the zone of danger when defendants improperly disclosed her confidential prescription records to her family members.  984 A.2d 812, 820 (Del. Super. Ct. 2009).  The Court reasoned that the spoken word "does its damage by permeating into the victim's social circles and disrupts her relationships and causes humiliation," but cautioned plaintiff may not be able to state a claim for NIED had the information been disclosed to a person unaffiliated with plaintiff.  *Id*. at 821.  Thus, contrary to Plaintiffs' contention, *Fanean* does not stand for the proposition one is in the zone of danger when receiving knowledge of the negligence.

11

## V.    <u>CONCLUSION</u>

Therefore, for foregoing reasons, Defendants' Motion is DENIED as to IIED and GRANTED as to NIED.

**IT IS SO ORDERED.**

*/s/ Patricia A. Winston*
**Judge Patricia A. Winston**