# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JAMES SEKCIENSKI AND
KAREN SEKCIENSKI,

    PLAINTIFFS,

     v.

HERBERT MANLEY,

    DEFENDANT.

:
:
:
:
:
:
:
:
:
:
:
:

C.A. No.: K23C-01-041 JJC


Submitted: March 28, 2024
Decided:  April 22, 2024


## <u>ORDER</u>

On this 22nd day of April 2024, having considered Defendant Herbert Manley's motion for summary judgment, and Plaintiffs James and Karen Sekcienskis' opposition, it appears that:

1.  Defendant Herbert Manley shot and killed the Sekcienskis' dog, Tank, in Millsboro, Delaware.[1] The Sekcienskis sue Mr. Manley under two tort theories: (1) outrageous conduct causing severe emotional distress (which includes intentional and reckless states of mind alternatives, but will be collectively referred to as "IIED"), and (2) negligent infliction of emotional distress ("NIED").[2] The Sekcienskis allege that Mr. Manley acted outrageously when he shot Tank and that they experienced severe emotional distress as a result.[3] As a remedy, the Sekcienskis

---

[1] Compl. (D.I. 1).
[2] *Id.* ¶¶ 7–10.
[3] Pl.'s Answer in Opp'n to Mot. for Summ. J. (D.I. 19).

seek compensatory damages, generally.[4] They also seek punitive damages because they allege Mr. Manley's extreme and outrageous conduct was done intentionally or with reckless indifference to their rights or safety.[5]

2. Mr. Manley moves for summary judgment.[6] At the outset, he contends that the Sekcienskis' claims should be framed as claims for personal injury compensation on Tank's behalf.[7] Mr. Manley correctly recognizes such claims are unavailable because a dog is considered personal property under Delaware law. Along that line, Mr. Manley argues that no IIED or NIED claims lie in this case because Delaware law does not permit personal injury or emotional distress claims arising from the loss of a pet.[8] Mr. Manley also asserts that the record does not support a reasonable jury's finding that he acted outrageously, that he targeted the Sekcienskis with his conduct, or that the Sekcienskis were in the "zone of danger" when he shot Tank.[9] He also contends that only Mr. Sekcienski has standing to sue for the loss of Tank because Mr. Sekcienski is Tank's registered owner.[10] Finally, he argues that punitive damages are unavailable because the Sekcienskis can only recover damages for the loss of Tank as personal property.[11]

3. The Sekcienskis contend that the summary judgment record contains evidence to support reasonable jury inferences that Mr. Manley is liable for IIED and NIED.[12] They rely, in significant part, on an affidavit from an alleged eyewitness, Mr. Charles Hurt.[13] Mr. Hurt recites that Tank did not act aggressively

---

[4] D.I. 1 ¶ 12.
[5] *Id.*
[6] Def.'s Mot. for Summ. J. (D.I. 17).
[7] *Id.* ¶ 3.
[8] *Id.* ¶ 6.
[9] *Id.* ¶ 8; *see also* Def.'s Supp. Mot. for Summ. J. (D.I. 32) ¶ 4(E).
[10] D.I. 32 ¶ 4(A).
[11] *Id.* ¶ 1.
[12] D.I. 19.
[13] Pl.'s Supp. Mem. (D.I. 31) at 2.

toward Mr. Manley or his fiancée, and that Tank was merely running near Mr. Manley at the time of the shooting.[14] Mr. Hurt also recites that Mr. Sekcienski was within eyesight of Mr. Manley when he drew his handgun.[15]

4. Summary judgment is appropriate if there are no genuine issues of material fact and judgment is appropriate as a matter of law.[16] The movant carries the initial burden.[17] If the movant meets his or her initial burden, the burden shifts to the non-moving party to demonstrate a material issue of fact.[18] After the shift, it is not enough for the opposing party to merely assert the existence of disputed issues of fact.[19] Rather, the non-movant must identify a material fact in dispute.[20] When resolving a summary judgment motion, the Court must consider the evidence of record in the light most favorable to the nonmoving party.[21] Affidavits may be submitted for the purpose of demonstrating a material issue of fact at the summary judgment stage.[22]

5. The evidence of record includes, *inter alia*, the Sekcienskis' responses to Mr. Manley's requests for admission,[23] the Sekcienskis' interrogatory responses, and AKC registration information for Tank.[24] It also includes the affidavit of an alleged eyewitness to the incident,[25] deposition testimony, and excerpts from the

---

[14] *Id.* Ex. B.
[15] *See Id.* ¶ 4 (reciting "[t]hat Jim Sekcienski was yelling at Mr. Manley to put his gun down but Mr. Manley refused to do that").
[16] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[17] Super. Ct. Civ. R. 56(e); *Sizemore*, 405 A.2d at 680.
[18] *Sizemore*, 405 A.2d at 681.
[19] *Brzoska v. Olson*, 668 A.2d 1355, 1365 (Del. 1995).
[20] *Id.*
[21] *Id.*
[22] Super. Ct. Civ. R. 56(c).
[23] Pls.' Answers to Req. for Admis. (D.I. 27).
[24] Am. Answer to Interrog. (D.I. 8).
[25] D.I. 31 Ex. B.

Superior Court trial transcript from Mr. Manley's criminal trial for cruelty to animals.[26]

6.    At the outset, Mr. Manley meets his initial burden on summary judgment.  He identifies significant evidence of record to support a jury finding that the Sekcienskis were not in the area when he shot Tank,[27] that he did not know the Sekcienkis,[28] that he harbored them no ill will,[29] and that Tank threatened him and his fiancée,[30] which justified the shooting.  As a result, the burden shifts to the Sekcienskis to identify a material fact in dispute.

7.    The Sekcienskis seek to meet their burden by identifying the following evidence of record.  On May 31, 2021, Mr. Manley shot  Tank with a handgun  in Millsboro, Delaware.[31]   Mr. Charles Hurt, an alleged eyewitness to the incident, recites facts in his affidavit that support several inferences.  Namely, Mr. Hurt recites that Tank did not act aggressively and was not running toward Mr. Manley or his fiancée when Mr. Manley shot him.[32]   Mr. Hurt also recites that Mr. Sekcienski was yelling at Mr. Manley during the incident to put his gun down.[33]   If the jury believes Mr. Hurt's anticipated testimony, it could reasonably find that Mr. Sekcienski was in the area when Mr. Manley shot Tank, that Tank posed no danger to Mr. Manley or his fiancée, and that Mr. Manley shot Tank while knowing him to be someone's pet.[34] In addition to Mr. Hurt's affidavit, the Sekcienskis rely upon  Mr. Manley's

---

[26] D.I. 32 Ex. 3, 5.
[27] D.I. 17 Ex. B.
[28] D.I. 32 Ex. 2.
[29] *Id.*
[30] *Id.* Ex. 5 at 19:13–18, 20:1–2.
[31] D.I. 1 ¶ 3; D.I. 31 Ex. A (identifying the type of gun used to shoot Tank).
[32] D.I. 31 Ex. B.
[33] *Id.* ¶¶ 2–3.
[34] *Id.* ¶ 4.

deposition testimony, where he admitted that he knew that the loss of a pet would cause emotional distress to an entire family.[35]

8.    The Sekcienskis' IIED claim requires them to prove that Mr. Manley intentionally or recklessly engaged in conduct that caused them severe emotional distress.[36]  Delaware law tracks the Restatement (Second) of Torts § 46.[37]  Section 46 defines the tort as follows:

> [o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . .[38]

9.    Section 46's comments provide helpful guidance regarding this common law cause of action.  Namely, the comments recognize that the determination of whether conduct rises to the level of the extreme and outrageous is presumptively factual.[39]  Furthermore, liability in an IIED claim arises from both intentional and reckless conduct.[40]  As to the lesser of the two states of mind, a defendant acts recklessly when he or she disregards a high probability that emotional distress will follow his or her conduct.[41]  In addition, an IIED claim does not require accompanying bodily harm.[42]  Finally, even though a person does not personally witness a defendant's extreme and outrageous conduct, the person may nevertheless maintain an IIED claim if it was highly probable that he or she would suffer severe emotional distress because of the defendant's conduct.[43]

---

[35] D.I. 31 Ex. A 4:20–23, 5:12–22.
[36] *Goode v. Bayhealth Med. Ctr., Inc.*, 931 A.2d 437, 2007 WL 2050761, at *2 (Del. 2007) (TABLE).
[37] *Id.*
[38] RESTATEMENT (SECOND) OF TORTS § 46 (AM. LAW INST. 1965).
[39] *See Id.* cmts. d–g (discussing contexts in which courts have found a defendant's conduct to be extreme and outrageous).
[40] *Id.* cmt. i.
[41] *Id.*
[42] *Id.* cmt. k.
[43] I*d.* cmt. l.

10. Here, the evidence of record, viewed in the light most favorable to the Sekcienskis, demonstrates genuine issues of material fact regarding each element of an IIED claim. Namely, factual issues remain regarding whether Mr. Manley's conduct was extreme and outrageous, and whether Mr. Manley intentionally or recklessly caused the Sekcienskis severe emotional distress. On this record, a reasonable jury could choose to believe, or disbelieve, an eyewitness's expected testimony that (1) Mr. Sekcienski was present at the time of the shooting, (2) Mr. Sekcienski told Mr. Manley to put his gun down, (3) Mr. Manley shot Tank, and (4) Mr. Manley either intended to cause or recklessly caused the Sekcienskis severe emotional distress. As to finding (4) regarding Mr. Sekcienski, the evidence could support that Mr. Manley *intentionally **or** recklessly* caused Mr. Sekcienski extreme emotional distress because of his proximity to the shooting. Along those lines, the evidence also supports a reasonable inference that Mr. Manley *recklessly* caused Ms. Ms. Sekcienski extreme emotional distress. Although she was not close enough to witness the shooting, Mr. Manley knew a likely female owner of the dog was also in the area, and Tank, after all, was the family dog.

11. Mr. Manley also contends that the Sekcienskis' IIED claims (as well as their NIED claims) are unsustainable under Delaware law because Tank was considered personal property. On this point, Mr. Manley mistakenly asserts that Delaware law precludes IIED claims that arise from witnessing or experiencing a defendant's conduct that damages only property. On that point, Mr. Manley's position conflates a claim filed *on behalf of a dog* (which is not compensable) with an independent claim based upon the effect of the pet's injury *on its owner*. Mr. Manley cites several cases which confirm that in Delaware, a dog has the same legal status as other personal property.[44] It is well established, however, that IIED is an

---

[44] *See Naples v. Miller*, 2009 WL 1163504, at *4 (Del. Super. April 30, 2009) ["U]nder our law the dog is property, not a person, no matter how great an effort has been made on the part of the owner

6

"independent tort action which does not require an underlying impact or physical injury."[45] Delaware decisions have repeatedly recognized claims for IIED when "property is damaged by the *reckless* act of another which rises to extreme and outrageous conduct."[46] The decisions Mr. Manley relies upon are distinguishable because they do not examine conduct that rises to the level of Mr. Manley's allegedly outrageous conduct.[47] If the jury accepts part of the evidence of record, and rejects other parts, it could find that his behavior was extreme and outrageous when he shot a dog known to be a pet, in the vicinity of one of its owners, where the pet presented no threat.[48]

---

to humanize it."); *Conte v. Fossett*, 2003 WL 1143329, at *3 (Del. Super. Mar. 19, 2003) ("[U]nder Delaware law, [a dog] has the same legal status as a piece of furniture."); *Simmons v. Farmer*, 2017 WL 5593524, at *4 (Del. Super. Nov. 7, 2003) "[U]nder Delaware law, a dog is personal property; therefore, the proper measure of damages is the general market rule.").

[45] *Pritchett v. Delmarva Builders, Inc*., 1998 WL 283376, at *4 (Del. Super. Feb. 27, 1998); *cf. Robb v. Pennsylvania R. Co*., 210 A.2d 709, 714 (Del. 1965) (rejecting the "impact rule" for NIED claims).

[46] *See Pritchett* (holding that witnessing the destruction of one's property as a result of intentionally tortious conduct can support a claim for IIED if that destruction is the result of intentional or reckless conduct which rises to the level of the extreme and outrageous*); Robb*, 210 A.2d at 714 (allowing a claim for NIED where the negligent operation of a train caused the destruction of the plaintiff's car, causing severe fright and emotional distress, because she was in the zone of danger).

[47] *See Naples*, 2009 WL 1163504, at *4 ("[S]ince the complaint does not allege reckless, extreme, or outrageous conduct on the part of the defendants, a cause of action does not lie for damages for emotional distress on that basis either."); *Conte*, 2003 WL 1143329, at *3 (holding in a dispute over the custody of a dog that the dog was not of "such symbolic significance or value" that the law will assume it to have been given in contemplation of marriage and therefore was an irrevocable inter vivos gift); *Simmons*, 2017 WL 5593524 (explaining in a case where a veterinarian negligently performed surgery on a dog, that while the dog's owner could give an estimate of the dog's value which could factor in veterinary expenses, such damages could not be recovered directly, as they could be in a personal injury action.).

[48] Mr. Manley's contention that 10 *Del. C.* § 3931 regarding recovery for a pet somehow abrogates the Sekcienskis' personal claims for IID is unpersuasive. First, the statute did not become effective until after the incident. Furthermore, if it had, the statute expressly preserves common law claims for damages. Furthermore, the statute does not abrogate common law tort claims that are separately and collaterally available based upon separate injuries suffered by *an owner.* Finally, returning to an illustration accompanying Section 46 helps demonstrate why there is a common law IIED claim in this case. Namely, Illustration 11 to Section 46 specifically recognizes a valid IIED claim for an owner whose dog was shot and killed. RESTATEMENT (SECOND) OF TORTS § 46 ill. 11.

12.     The Sekcienskis' NIED claim does not survive summary judgment on this record, however. A Delaware NIED claim requires a plaintiff to show that the defendant's negligence proximately caused fright to another, who was within the immediate area of physical danger arising from the negligence (the "zone of danger"), which in turn produced physical consequences.[49] Much of the parties' written arguments focused on whether the Sekcienskis were within the zone of danger when Mr. Manley shot Tank.[50] On one hand, based on Mr. Hurt's affidavit, there is sufficient evidence to support a jury's finding that Mr. Sekcienski was in the zone of danger when Mr. Manley discharged his firearm.[51] On the other, there is insufficient evidence to support an inference that Mrs. Sekcienski was within the zone of danger.[52] Apart from the zone of danger question, however, neither of the Sekcienskis identify a factual issue regarding another element of NIED – the requirement that there be a physical injury or a physical manifestation of their alleged emotional distress.[53] Here, the summary judgment record does not support a jury finding that either plaintiff suffered physical consequences as a result of Mr. Manley's actions. Given the absence of such evidence, their NIED claim must be dismissed on summary judgment.

13.     Mr. Manley also seeks summary judgment as to the Sekcienskis' punitive damages claim.[54] In support, Mr. Manley cites 10 *Del. C.* § 3931 and again

---

[49] *Robb v. Pennsylvania R. Co*., 210 A.2d 709, 714 (Del. 1965).

[50] *See*, *e.g*. D.I. 17 ¶¶ 7–8 (asserting that the plaintiffs did not witness the incident and were not close enough to be within the zone of danger ); D.I. 19 ¶ 7 (noting a lack of record evidence as to the range of the gun shot by Mr. Manley; D.I. 31 (discussing Mr. Manley's deposition where he admitted that Tank seemed to be with two people at the time and that they had called for Tank).

[51] *See* D.I. 31 Ex. B (stating, "[t]hat Jim Sekcienski was yelling at Mr. Manley to put his gun down but Mr. Manley refused to do that").

[52] D.I. 32 Ex. 3 at 7:20–23,

[53] *See Robb*, 210 A.2d at 714 (holding that although a claim for NIED does not require a physical impact, it nevertheless requires the plaintiff to demonstrate that the emotional distress "produced physical consequences").

[54] D.I. 17 ¶¶ 8–9.

relies upon the rule that pets are personal property.[55] According to Mr. Manley, because a pet is personal property, damages in such a case are limited to Tank's fair market value, and perhaps veterinary expenses, which makes punitive damages unavailable.[56]

14. As discussed *supra*, however, the decisions Mr. Manley cites do not preclude common law punitive damages claims when the extreme conduct caused physical harm to only property. In this case, the Sekcienskis seek punitive damages for IIED that Mr. Manley allegedly inflicted upon *them*, not Tank. On this record, the jury must decide if Mr. Manley's conduct rose to the level of outrageousness necessary to award punitive damages, and if so, it must determine the amount of such damages.[57]

15. As a final matter, the parties did not completely address two of the Sekcienskis' claims. Although, Mr. Manley moved for full summary judgment, neither he nor the Sekcienskis fully addressed the claims for the loss of Tank's value and veterinary expenses.[58] On the record presented to the Court, the Court cannot determine if there are sufficient facts to support fixing those damages with reasonable certainty. Furthermore, the shooting preceded the enactment of 10 *Del.C.* §3931 which provides for the recovery of veterinary expenses for wrongful harm to a pet. If the Sekcienskis intend to present those claims, the parties should

---

[55] *Id.*; 10 *Del. C.* § 3931 (providing that "[a] person who tortiously causes an injury to, or death of, a pet while acting directly or through an animal under that person's ownership, direction, or control is liable to the owner of the pet for compensatory damages.").

[56] D.I. 17 ¶¶ 5, 9.

[57] *See Boas v. Christiana Care Health Serv., Inc.*, 2023 WL 4842102, at *2 (Del. Super. July 26, 2023) (recognizing that the availability of punitive damages is a fact-based inquiry as "reasonable minds can differ as to" whether alleged conduct is sufficiently outrageous or reckless); *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987) (explaining that the availability of punitive damages depends upon whether a defendant's conduct is "outrageous," because of "evil motive" or "reckless indifference to the rights of others.") (quoting RESTATEMENT (SECOND) OF TORTS § 908 cmt. b (AM. LAW INST. 1979).

[58] D.I. 1 ¶6(b).

highlight any disagreements in the pretrial stipulation regarding (1) the loss of Tank's value, and (2) the availability of veterinary expenses under the common law.

**WHEREFORE**, Defendant's motion for summary judgment is **GRANTED, in part, and DENIED, in part**.

**IT IS SO ORDERED.**

<u>/s/ Jeffrey J Clark</u>
Resident Judge